**Beulah N. THACKER, Plaintiff,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.**

No. 66–C–51–A.

United States District Court
W. D. Virginia,
Abingdon Division.

March 7, 1967.

Robert T. Winston, Jr., Kime, Jolly, Winston & Clemens, Salem, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION

MICHIE, District Judge.

Claimant is a forty-one year old woman who lives in Norton, Virginia. Since her early childhood she has suffered from epileptic seizures. In 1959 she was found to be disabled within the meaning of the Social Security Act and was awarded benefits under her father's coverage. These benefits ceased, however, upon her marriage in 1964 to a man who almost immediately thereafter ran off and has not been heard from since.

By an application filed January 28, 1965, claimant attempted to obtain disability benefits in her own right on the ground that she became disabled in 1957 due to "epilepsy". In a decision which became final on April 29, 1966, the Secretary found that she was not entitled to receive benefits because she did not meet the special earnings requirement.

█ Claimant has petitioned this court pursuant to 42 U.S.C. § 405(g) to review the Secretary's decision. I have concluded that the determination of the Secretary is supported by substantial evidence and, therefore, must be affirmed.

Summarized, the special earnings requirement provides that a person is eligible for disability insurance only if he becomes disabled before the termination of a forty quarter period within which he has had not less than twenty quarters of coverage. 42 U.S.C. § 423(c) (1) (B).[1]

A quarter of coverage for social security purposes is defined as a period of three calendar months ending respectively on March 31, June 30, September 30 and December 31, during which the claimant received from an employer wages in the amount of $50.00 or more, or self-employment income amounting to $100.00 or more. 42 U.S.C. § 413(a) (2).

The Secretary found that the claimant had been employed from 1946 through 1958 and that she had achieved the required minimum of $50.00 of income in twenty-one quarters, but that in any forty quarter period, the maximum number of quarters she had attained was nineteen, one less than required by the statute. Finding that claimant did not meet the special earnings requirement, the Secretary did not reach the question of whether the claimant suffered from a disability.

The only question before me on this petition to review is whether the finding of the Secretary that claimant did not possess the requisite number of quarters of coverage is supported by substantial evidence. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966).

During the period from 1946 through 1958 claimant was employed as a dishwasher at the Liberty Cafe in Norton owned and operated by Mr. Cecil Gardner, where she was paid about $21.00 a week. She has alleged no other place of employment. During this period, Mr. Gardner, as required by law, reported wages paid her to the Social Security Administration. The employer's wage records and those of the Secretary were compared and were found to be identical in every respect.

█ Where the Secretary has compiled wage records upon information submitted by an employer, these records are admissible as evidence and are competent to show wages earned during the periods shown. Furthermore, the law provides:

\* \* \* The absence of an entry in such records as to wages alleged to have been paid to, or as to self-employment income alleged to have been derived by, an individual in any period shall be evidence that no such alleged wages were paid to, or that no such alleged income was derived by, such individual during such period. 42 U.S.C. § 405(c) (3)

During a limitations period of three years, three months and fifteen days

---

1. The 1965 amendments did not alter this requirement. Carter v. Celebrezze, 367 F.2d 382 (4th Cir. 1966).

following the ending of any calendar year the records of the Secretary may be corrected so as to eliminate errors whether of inclusion or omission. 42 U.S.C. § 405(c) (1) and 42 U.S.C. § 405(c) (4). However, after the expiration of this period of limitation the records acquire a degree of finality.

The force of an absence of record entries over a given period to indicate the absence of income or wages paid during that period depends upon whether the alleged earnings were wages received from an employer or whether they were self-employment income. With respect to wages, which is the only type of income alleged to have been received by claimant in this case, an absence of record entries during a quarter is, after the expiration of the limitation period, presumptive evidence that no wages were received during that quarter. 42 U.S. C. § 405(c) (4) (B).

The presumption that the Secretary's records are correct would appear to be rebuttable, but only upon a showing of positive evidence to the contrary. Carqueville v. Flemming, 263 F.2d 875, 876 (7th Cir. 1959); Williams v. Celebrezze, 243 F.Supp. 103, 107 (E.D. Ark.1965).

The Secretary's wage records show that no wages were received by the claimant during 1952 or 1956. As to both of these years, of course, the limitation period has run. If she could have established but one quarter of coverage during either of these years, claimant would have met the special earnings requirement. The Hearing Examiner was well aware of her plight. The record discloses that he searched diligently for evidence to support her assertion that she had worked the majority of each of the years in question.

Claimant testified at the hearing that in 1952 she started work in the latter part of April and worked on and off for about six months. The claimant's testimony as well as that of her father and mother appears rather confused as to the precise dates on which her work be-

gan and terminated in 1952 and, for that matter, as to other years which are not in question. This uncertainty is quite understandable, in view of the time which has elapsed between then and now.

The attempt to establish coverage during 1952 concentrated primarily on the last quarter. The claimant testified that she was working at Christmas in 1952 and that her employer, Cecil Gardner, gave her $10.00 as a Christmas present that year. She also testified that she was working when a Game Warden, Cecil Bays, was killed on November 22, 1952, and that as a result of her work she was unable to go to his funeral. Her claim that she was working during November, 1952 is corroborated by a receipt for wages received dated November 22, 1952 written on a "guest check" showing $16.83 received for six days work. Evidence indicates that the guest check was in Cecil Gardner's handwriting and that such guest checks were normally given as receipts for wages paid. In addition, the claimant introduced a statement of a Mrs. Madeline Sturgill who had been employed in the Liberty Cafe until she left to have a baby in October of 1952. Mrs. Sturgill believed that claimant had worked at the cafe on and off during the year and that she was still working there in October, 1952, when Mrs. Sturgill left.

The Hearing Examiner concluded that there was sufficient evidence to overcome the presumption created by the Secretary's records that no wages had been paid during the last quarter of 1952 as he found that wages in the amount of $16.83 as evidenced by the guest check had been received. However, he also concluded that the evidence was insufficient to establish wages received during any other quarter of 1952 and that the evidence as to the last quarter established wages received only in the amount stated on the guest check and, this amount being less than $50.00, was insufficient to establish a quarter of coverage.

The evidence introduced to establish that claimant worked during the

year 1956 is more uncertain than that introduced for the year 1952. Claimant testified that she thought she started in April of 1956 and that she quit in August. She claims to have started work again on the 24th day of October of that year, working on into 1957. Again, claimant's testimony appears confused and that of her parents even more so. The principal evidence introduced to indicate employment during this year is a number of receipts for purchases made during 1956 and 1957. Although money spent is some evidence of income received, it is by no means conclusive.

Mr. Gardner was not present at the hearing. Considering that Mr. Gardner's recollections could be vital, before reaching a decision the Examiner sought and obtained a statement from him and also inspected his records. All evidence so gained was contrary to claimant's assertions. Mr. Gardner's records, in addition to his wage records, proved to be consistent with the claimant's not having worked during 1952 and 1956. Furthermore, he stated that claimant did not work for him during those years, basing his belief primarily on the fact that he had always recorded the wages paid to employees in his records. On further questioning with respect to the 1952 period, Mr. Gardner stated that he had had two other dishwashers during that time whom he identified by name. Apparently, Mr. Gardner's records, which were thoroughly investigated by both the attorney for the claimant and the Secretary's representative, disclosed no irregularities inconsistent with his testimony.

█ Claimant argues that the finding by the Examiner that the receipt in the form of the guest check establishes that some wages were received during the last quarter of 1952 indicates error in the wage records and thus calls into question the entirety of the employer's records. This, she urges, destroys the presumption of validity which would otherwise have attached to the Secretary's records. I do not think that the finding of error in this single instance is sufficient to destroy the evidentiary value given by law to the Secretary's records. The presumption of validity remains except to the extent that in a given instance the records are shown by positive evidence to be incorrect.

It would seem that if a guest check were given on this occasion and where they were customarily given as receipts, if other wages had been paid claimant during the periods in question, she would have been able to produce at least one other such guest check. Furthermore, where the employer during other years regularly reported wages received by the claimant, it does not seem reasonable that he would by neglect or design fail to do so for two separate periods of a year or more in duration.

█ It is not within the province of this court to evaluate and to weigh the evidence. To do so would be to allow claimant a trial *de novo*, which is contrary to the force given the Secretary's determination by statute. This is particularly true in this case where it was necessary for the Secretary to evaluate the credibility of witnesses and to resolve conflicts in the evidence, matters here, as always, most appropriately left to the trier of fact. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966); Williams v. Celebrezze, 353 F.2d 74 (4th Cir. 1965); Smith v. Gardner, 253 F.Supp. 991 (D.C.S.C.1966).

Mindful of the limited power of review in this court and the proper allocation of fact finding to the Secretary, I conclude that the presumption of validity accorded by law to the wage records of the Secretary, corroborated by independent evidence, constitutes substantial evidence in support of the Secretary's decision.

An order will be entered accordingly.