**James R. KEPHART, Appellant,**

v.

**Elliot L. RICHARDSON, Secretary, Department of Health, Education and Welfare, Appellee.**

**No. 74-1156.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Sept. 18, 1974.

Decided Nov. 19, 1974.

Thomas A. Swope, Jr., Swope & Swope, Ebensburg, Pa., for appellant.

Richard L. Thornburgh, U. S. Atty., James A. Villanova, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before VAN DUSEN, HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

While silence may be golden in the adage, silence in the Social Security records of employment may have quite a contrary effect on a claimant for disability benefits who must establish a wage earning history. In this appeal from a denial of benefits, we conclude that, while the absence of earnings entries is statutorily denominated evidence of nonemployment, it may be outweighed by credible testimony of the claimant which fills the void. Because the administrative process failed to properly consider the positive evidence which might have eliminated the negative, we remand for further proceedings.

Claimant James R. Kephart began to work in the coal mines of Pennsylvania at the age of 14 and continued there for more than thirty years. After the mines near his home closed in 1959, he embarked upon a series of light laboring jobs with various concerns in the construction field and in agriculture. In

1969, he was unable to continue employment because his physical condition had deteriorated. He applied for disability benefits at that time pursuant to the provisions of the Social Security Act.[1]

After a hearing before an administrative law judge, the Secretary denied benefits because he found that Kephart had not worked the requisite number of quarters to have been covered under the Act when he became disabled.[2] This determination was made primarily because the Secretary's records did not show any payments of wages during the years 1960, 1961,[3] 1962, 1963 and 1965, although the claimant produced evidence that he had been employed during this period. On appeal, the district court granted summary judgment for the Secretary.

In 1964 and from 1966 to 1969, Kephart worked at various times for a number of construction companies which duly filed returns of his earnings. From 1960–1963 and in 1965, however, he worked on a piecework basis as a crop picker for a number of farmers near his home. He filed an affidavit, joined in by his wife and three other persons, in 1972 asserting that he worked for Hoover Brothers of New Paris, Pennsylvania in the months of July, August, September and November of 1960, 1961, 1962, 1963 and 1965, and for a Ray Glessner in October of each of those years. At the hearing, Kephart testified that he worked as a farmhand during the years 1961, 1962, 1963, and 1965, adding that on a "couple" of occasions his wife worked with him.[3a]

A response to a questionnaire from the Social Security Administration by Glessner Farms and a report of an in-

---

1. 42 U.S.C. § 401 et seq.
 Kephart was found to be eligible for "black lung" benefits, but the criteria for that program are different from those for social security disability.

2. A "quarter" is a three calendar month period in which an individual receives a specified amount of wages. 42 U.S.C. § 413(a)(2).

3. The small sum of $2.67, shown as earnings in 1961, has not been explained, but it is minimal, has no effect on this case in any event, and will be disregarded.

3a. During the hearing, claimant's counsel suggested to him that he returned to work in 1961 and apparently misled Kephart into also stating 1961. The Glessner exhibits showed that the claimant had been employed in 1960.

terview with the employer were introduced into evidence at the hearing. These exhibits established that the claimant and his wife had indeed harvested potatoes but stated that only one check had been issued to the husband for the labors of both. The Hoover Brothers partnership had been dissolved before the questionnaire had been sent, and the response to it was not to the point.[4]

On the basis of the testimony and affidavits, the hearing officer found that the government's records, which showed no agricultural earnings in the years in question, demonstrated that the claimant had insufficient quarters of coverage. The hearing officer held that the Glessner evidence ". . . cannot be viewed as substantial evidence . . . sufficient to rebut the presumption of validity accorded by law to the Secretary's wage records . . . I view the mere naked assertion by the claimant in his affidavit and in his testimony at the hearing with respect to earnings from Hoover Bros. to be insufficient evidence to rebut the presumption of validity with which the Act cloaks the Secretry's records." [5]

The issue in this case is a very narrow one and is focused on the determinations to be made when a claimant alleges that he did in fact work during a given period of time for which the government's records are silent. We conclude that a claimant is entitled to substantiate his position and that this evidence must be given consideration by the Social Security Administration.

42 U.S.C. § 405(c)(2) provides that on the basis of information submitted to the Secretary and after such verification as deemed necessary, he shall maintain records of wages paid to an individual. The next subsection, (3), provides that such records may be evidence in proceedings before the Secretary and that "[t]he absence of an entry in such records as to wages alleged to have been paid to . . . an individual in any period shall be evidence that no such wages were paid . . . during such period." Subsection (4) discusses the Secretary's authorization to correct the records, providing in subpart (A) that the records as to wages paid "shall be conclusive." Subpart (B) recites that "the absence of an entry . . . as to wages alleged to have been paid . . . during any period . . . shall be presumptive evidence . . . that no such alleged wages were paid . . . ."

While there may be some question as to whether subsection (3) or (4) sets the evidentiary standard to be used for hearings before an administrative law judge, we do not find any material inconsistency. Read together, they clarify what Congress intended to be the scope of the presumption as to wage records.

---

4. One of the former partners recited that if any social security payments had been due for Kephart, deductions would have been made by the partnership. This partner also indicated that the amounts paid by the Hoover Brothers to Kephart were "unknown" for the years 1960–1963. The form in which this statement was made instructs the employer as follows: "If no wages were paid in the periods checked below, write 'None.' If the amounts are unknown, write 'Unknown.' " Notably, the questionnaire did not deny that Kephart had worked for the partnership.

Another questionnaire was completed by a Wilmer Taylor, indicating that no wages were paid to Kephart but that he had been "paid on a per bushel basis." Taylor's connection with the case was not developed further in the record.

5. Had the Secretary adopted Kephart's proof of agricultural employment, the earnings requirement of the Act would have been met. The Secretary concedes that the official employment records establish 15 quarters during the 40 quarters prior to the disability. The remaining coverage needed to attain the 20 quarter minimum would have been credited as a result of Kephart's work for Glesner and Hoover Brothers or for Hoover Brothers alone. *See* 42 U.S.C. § 413(a)(2)(iv).

Whether Kephart qualifies under the Act's definition of disability is not presented by this appeal since a determination that he was ineligible for the benefits because of insufficient coverage precluded a decision on the merits of the claim.

Presumptions in the law serve a useful purpose and have caused more than their share of judicial and scholastic commentary. We need not go much further here than to refer briefly to Wigmore on Evidence §§ 2490 and 2491 and to the frequently quoted statement, "Presumptions . . . may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts." [6]

Wigmore agrees with this view and states that it is erroneous to hold, as some courts do, that after positive evidence has been introduced in a case, the presumption does not vanish but may be submitted to the fact finder for consideration along with the positive evidence. He notes that a presumption should have no artificial probative force, once contrary evidence has been introduced.

Congress resolved that disagreement in the narrow area in which we find ourselves here. The fact of absence of an entry is "evidence" and must be considered along with any other evidence that may be introduced. At the same time, the "presumptive" effect is not conclusive since the statute makes a sharp distinction between a positive entry which is given such conclusive status and the absence of entries which is only "evidence." The differing treatment has a rational basis. A claimant should not be deprived of the benefits to which the positive record entitles him, but he should not be precluded from entitlement where he can produce evidence to fill a void in a silent record.

▉ As we read the statute, therefore, the fact that the records show no earnings is merely one evidentiary fact which must be weighed against other evidence produced by the claimant. In this situation, the usual burden of proof applies—that is, if the evidence supporting the claimant preponderates, he is entitled to prevail. We see nothing in the statute which requires the claimant to rebut the negative condition of the

records by "substantial evidence." *Cf.* Thacker v. Gardner, 268 F.Supp. 663 (W.D.Va.), aff'd 387 F.2d 387 (4th Cir. 1967). In most claims this subtle difference will have little practical effect, but in close cases it may be important. Since the hearing officer applied an incorrect standard in appraising the evidence here, it must be reassessed.

▉ It follows that the usual tests of credibility must be applied to the claimant's testimony. If it is credible, it must be given the same weight in refuting a silent record that it would be entitled to in any other phase of the case. In making such judgments, of course, the hearing officer is concerned with more than simply whether the claimant is being truthful to the best of his ability. The fact finder must consider factors such as accuracy of memory, opportunity to know the pertinent facts, and ability or inability to present them because of educational or intellectual deficiencies. He must also weigh the possible effects of bias, conscious or otherwise. If, after applying the usual tests, the hearing officer is convinced that a claimant has presented objectively accurate facts, then his testimony is evidence which cannot be disregarded, whether corroborated or not. Corroboration is not essential to reach a determination; it is only an aid to minimize doubts which the fact finder might otherwise harbor.

These decisions on credibility are not always easy, but they must be made by the administrative hearing officer if the courts are to fulfill their function. As we said in Baerga v. Richardson, 500 F. 2d 309, 312 (3d Cir. 1974):

"In our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This

---

6. Stumpf v. Montgomery, 101 Okl. 257, 226 P. 65 (1924). *See* IX Wigmore on Evidence, § 2491, at 290 n. 6.

▉

is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence. It is incumbent upon the examiner to make specific findings—the court may not speculate as to his findings."

 The decision of the hearing officer also speaks of the "presumption of validity with which the Act cloaks the Secretary's records." If, by that phraseology, the officer meant that these records are entitled to the deference usually extended to matters covered by the presumption of administrative regularity, then the statement was not correct. A presumption of regularity surrounds public officers to the extent that, in the absence of contrary evidence, a reviewing court assumes that they have properly discharged their official duties. *See* 2 Davis, Administrative Law Treatise § 11.06. Although we can assume that the Secretary properly compiled the wage data received from employers, it does not follow that the submitted information was accurate in the first instance.

Our review of the evidence in the case *sub judice* does not lead us to a conclusion that the farmers and fruit growers who may have hired the claimant on a piecework basis were excessively concerned with maintaining records in exhaustive detail. Since none of them testified or submitted detailed statements, we make this reference only as an indication of one of the factors which should be developed before determining the weight to be given to the absence of wage entries for the plaintiff here.

 After Kephart initiated his claim, he advised the Social Security regional office of the names of his alleged agricultural employers. The Administration then sent a questionnaire to those persons but in most cases received equivocal responses focused mainly on the lack of records. The issue here is not whether the employer's records were complete but whether Kephart in fact worked for these individuals and, if he did, for what period of time. The government, however, did not follow up by even so much as a telephone call or letter requesting clarification of the incomplete data received from the alleged employers.[7] Having undertaken to make an investigation of this portion of the claim, in fairness the government should have undertaken to secure further explanations. We think it pertinent, once more, to repeat what we said in Hess v. Secretary of Health, Education, and Welfare, 497 F.2d 837, 840 (3d Cir. 1974):

"Although the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails . . . We do not say that an administrative law judge must search out all the relevant evidence which might be available, since that would in effect shift the burden of proof to the government. But, these proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act."

Since we find that the hearing examiner applied an improper standard in weighing the evidence dealing with Kephart's employment and that there was not a full development of other evidence on this point, the judgment of the district court will be vacated and the matter remanded to the district court with directions for remand to the Social Security Administration for further proceedings consistent with this opinion.

7. The only exception was the Glessner memo which was introduced at the hearing.