Herbert E. COULTER, Appellant,

v.

Casper W. WEINBERGER, Secretary of the Department of Health, Education, and Welfare, Appellee.

No. 75–1098.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6) Sept. 8, 1975.

Decided Nov. 28, 1975.

Linda M. Bernstein, Community Legal Services, Inc., Philadelphia, Pa., for appellant.

Richard L. Thornburgh, U. S. Atty., David B. Atkins, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before ALDISERT, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

One man's frustrating struggle in the toils of federal red tape forms the back-

drop for this appeal. The appellant admittedly is disabled, but his successive applications for benefits under the Social Security Act have been denied in a series of administrative actions marred by clerical errors and incomplete evaluations. We conclude that he has not been given a full and complete hearing on the issues of past disability and eligibility for coverage under the Act. Accordingly, we vacate a denial of benefits and remand because of a record which reveals a failure to review relevant rulings and regulations.

Petitioner is now 49 years of age. In that span of years he has had more than his share of physical ailments and disabilities. While in the United States Army in 1952, he contracted tuberculosis and was hospitalized as a result. After discharge, he was a patient at a Veterans Administration hospital in Nashville, Tennessee from October, 1953 to July, 1954. During that stay, a portion of his right lung, one rib and part of another were removed.

In the following two years he studied accounting at a business school, but on July 19, 1956 he was hospitalized for treatment of a spontaneous pneumothorax on the left.

Mr. Coulter worked as a bookkeeper for a few months in 1957 and was employed by the post office as a substitute clerk from December of 1957 until July 1958, when he was hospitalized once more. On this occasion he received ten electroshock treatments for a schizophrenia condition, and was not discharged from the hospital until June of 1959.

It was during this period that petitioner had his first contact with the Social Security Administration. On January 6, 1959, while he was receiving treatment for schizophrenia at the South Florida State Hospital, his mother filed an application for disability benefits on his behalf. On March 20, 1959 the application was denied for the stated reason that Mr. Coulter did not have enough quarters of coverage to qualify for benefits. It was discovered years later that this ruling was erroneous and that in 1959 Coulter had met the quarters of coverage test.[1]

Claimant did some minimal work as a bookkeeper during a period of months in the latter part of 1959 but, according to his testimony, had to quit because of back pain. He was next employed at a drug store for some months, and in December of 1961 returned to the post office as a clerk.[2] He stated that he received heat treatment at the post office for his back condition, and in July, 1962 was examined at the Rentz Medical Center in Miami. There he was told that, because of demineralization, his bones resembled those of an 85 or 90 year old man.

The following month he was admitted to a Veterans Administration facility where x-rays showed a collapse of the sixth and an early collapse of the eleventh thoracic vertebrae. The diagnosis was idiopathic osteoporosis, a loss of bone mass.[3] In September of 1962, Coulter resigned from the post office because of his back pain and inability to continue work.

1. In 1959 a disabled worker under the age of 50 was not entitled to receive monetary payments. However, he was entitled to the benefits of a "disability freeze" which would preserve his insured status even though he was not working during the period of incapacity. The fifty year age requirement was eliminated by the Social Security Act amendments of 1960. See 1960 U.S.Code Cong. and Admin. News, p. 3622.

2. Because he was under the Civil Service System during this particular period, he received no credits toward Social Security eligibility.

In 1958, because he was in a temporary employee status, the post office did allow credit for Social Security benefits.

3. Idiopathic osteoporosis is a spontaneous "abnormal rarefaction of bone, seen most commonly in the elderly. Depending on the extent of demineralization of bone, it may be accompanied by pain, particularly of the lower back; deformities, such as loss of stature; and pathological fractures." Dorland's Illustrated Medical Dictionary (25th ed. 1974).

In April of 1964 he entered the Veterans Administration Hospital in Washington, D. C. and remained there for a year. During this stay, it was discovered that there was a large mass involving the first and second thoracic vertebrae, with compression of the spinal cord and accompanying paralysis. The major portion of the tumor was removed by surgery. A Veterans Administration Review Board concluded that he had had the tumor for a few years prior to 1962, but not likely back as far as 1952 when he concluded his Army service.

In 1967 Coulter fractured his hip and required surgery on two occasions, including the implantation of an artificial joint. In that same year, he underwent a surgical procedure on the fingers of his left hand.

As of December, 1971 Coulter was deemed to have no function in his left hand. In November of 1972, the remainder of the tumor in the thoracic area was surgically removed at the Veterans Hospital in Pittsburgh, Pennsylvania. He presently is 5 feet 7 inches tall, weighs 96 pounds, is emaciated, stooped, and has great difficulty in walking and using his hands. He has not had any employment since 1962. The Secretary concedes that he is presently disabled and has been for many years.

Mr. Coulter's contacts with the Social Security Administration have resulted in nothing but frustration. He filed a second application in 1967, but was again denied benefits because of lack of quarters of coverage. A third application was filed on December 5, 1968, listing August, 1962 as the onset of disability. After this in turn was denied, he requested reconsideration, alleging that his disability began in 1953. The Social Security Administration then determined that he met the earnings requirement until September, 30, 1960 but that his work at the post office in 1962 demonstrated an ability to engage in substantial gainful activity.

At Mr. Coulter's request a hearing was held, and on May 20, 1969 the examiner on review of the evidence concluded that since the claimant had been able to earn $3,900.00 with the post office in 1962, he was not disabled as of September 30, 1960. No appeal was taken from this decision. In none of these proceedings was Mr. Coulter represented by counsel.

On June 13, 1972 the claimant filed his fourth application, that presently under consideration.[4] After a hearing, the administrative law judge concluded that administrative res judicata barred consideration of Mr. Coulter's claim and, in the alternative, that he was not disabled in September, 1960 because of the earnings record in 1962. The appeals council affirmed the ruling on res judicata but vacated the alternative holding.

On appeal to the district court, summary judgment was granted for the Secretary on the ground that there had been no abuse of discretion in refusing to reopen the claim filed in 1968.

Unlike many other social security cases, the question here is not whether Coulter is currently disabled—the Secretary admits that he is. Two other issues are presented: whether Coulter has ever been accorded the full hearing to which he is entitled under the Act; and whether there has been a correct computation of the 20/40 quarter coverage requirement of § 223(c), 42 U.S.C. § 423(c). Determination of the latter question requires an evaluation of Coulter's disability in the 1958–1962 period.

Initially, we must meet the question of jurisdiction. A number of cases have held that a determination to invoke administrative res judicata by the Secretary is not an appealable order, e. g. *Neighbors v. Secretary of Health, Education and Welfare,* 511 F.2d 80 (10th Cir. 1974); *Maddox v. Richardson,* 464

4. Once again the Social Security Administration erroneously computed the quarters of coverage. In a letter dated September 15, 1972 it said that Coulter last met the earnings require-ment on January 30, *1956,* despite the fact that in 1968 the critical date was determined on reconsideration to be September 30, 1960.

F.2d 617 (6th Cir. 1972); *Hughes v. Finch,* 432 F.2d 93 (4th Cir. 1970). This court has never analyzed that issue in depth. In *Phillips v. Celebrezze,* 319 F.2d 530 (3d Cir. 1963), a per curiam opinion cited *Hobby v. Hodges,* 215 F.2d 754 (10th Cir. 1954), and affirmed a district court opinion reported at 211 F.Supp. 510 (E.D.Pa.1962). However, the district court's decision was somewhat equivocal and appeared to be based in part on the merits of the case. In *Shelton v. Secretary of Health, Education and Welfare,* 428 F.2d 81 (3d Cir. 1970), the question was posed but not answered. In *Davis v. Richardson,* 460 F.2d 772 (3d Cir. 1972), the court stated its agreement with *Filice v. Celebrezze,* 319 F.2d 443 (9th Cir. 1963), but granted review under the Administrative Procedure Act to determine if the Secretary had abused his discretion in refusing to reopen the earlier claim.

■ *Hobby v. Hodges, supra,* and *Filice v. Celebrezze, supra,* both stand for the proposition that in social security cases the courts do not have jurisdiction to determine if the Secretary correctly applied administrative res judicata. This panel does not agree with the cited cases and their progeny but believes that the Secretary's action is reviewable as a final order under 42 U.S.C. § 405(g). *Cf. Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). However, since *Davis v. Richardson, supra,* holds that review under Section 10 of the A.P.A. is available,[5] we follow that route rather than referring this case to the court in banc for reconsideration of our earlier interpretations of § 405(g), see Third Circuit I.O.P. M(2).

■ Administrative res judicata is a significant aid to the efficient operation of an adjudicative agency. However, strict adherence to res judicata's restrictive effects is not particularly appropriate in an administrative setting where the claimants are generally not represented by counsel and the process is not based on adversarial concepts. *See* 2 Davis Administrative Law § 18.03 (1958); *Lauritzen v. Weinberger,* 514 F.2d 561 (8th Cir. 1975); *Grose v. Cohen,,* 406 F.2d 823 (4th Cir. 1969); Annot., 14 A.L.R. Fed. 776 (1973). In recognition of these factors, the Social Security Administration promulgated regulations which in part provide:

"An initial, revised, or reconsidered determination of the Administration or a decision or revised decision of an hearing examiner or of the Appeals Council which is otherwise final . . . may be reopened: _

\* \* \* \* \* \*

(c) At any time when:

\* \* \* \* \* \*

(8) Such initial, revised, or reconsidered determination or decision or revised decision is unfavorable, in whole or in part, to the party thereto but only for the purpose of correcting clerical error or error on the face of the evidence on which such determination or decision was based." 20 C.F.R. § 404.957.

■ Our review of the record reveals such error as would require a reopening of the 1968 claim under the standard set by the regulations. The hearing officers' pre-occupation with the claimant's earnings record in 1962 led to a failure to consider all of the applicable regulations and to overlook a number of other significant factors which would have a bearing on the correct adjudication of the claim.

Because of the error of the Social Security Administration in 1959, there was no determination at that time as to whether Coulter was disabled. If a finding of disability had been made, Coulter would have become eligible for payment of benefits in 1960 when the Act was amended to eliminate the age requirement. It seems unlikely that he would have secured any employment thereafter in view of his testimony that he worked

---

5. *See* the discussion by Judge Gewin in *Ortego v. Weinberger,* 516 F.2d 1005 (5th Cir. 1975), and Judge Friendly's opinion in *Cappadora v. Celebrezze,* 356 F.2d 1 (2d Cir. 1966).

in 1961 and 1962 only out of dire need despite his pain, disability and need for treatment. At that time his only other source of income was a pension of $67 per month which he received from the Veterans Administration.

The two hearing officers who heard the case after the 1968 and 1972 applications applied the current statutory test for disability. They found that the claimant's physical condition had not lasted for a continuous period of twelve months before September 30, 1960 nor could it be expected to last for twelve months or more thereafter. This determination was based on the premise that the 1962 employment demonstrated an ability to engage in substantial gainful activity on September 30, 1960.[6]

We recognize the difficulty which faces the Social Security Administration in determining the extent of a claimant's disability as it existed some eight or twelve years before an application is filed. But the facile solution of relying almost entirely upon earnings during part of 1962 does not give the claimant the full and complete hearing to which he is entitled.

A social security judge acts an an examiner charged with developing the facts, *Richardson v. Perales,* 402 U.S. 389, 410, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), and is under an affirmative duty to inquire into all the matters at issue. 20 C.F.R. § 404.927. As we said in *Hess v. Secretary of Health, Education and Welfare,* 497 F.2d 837, 840 (3d Cir. 1974):

> "Although the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails."

The social security regulations on evaluation of earnings, 20 C.F.R. § 404.1532–1534, in substance provide that wages above a certain level demonstrate a lack of disability. But an exception is provided where the work activities themselves establish that the individual does not have the capacity to engage in substantial gainful activity. 20 C.F.R. § 404.1534(b). The social security judge, therefore, cannot end his inquiry when a magic number on the earnings scale appears. The question still is whether the individual is disabled within the meaning of the Act. *Stark v. Weinberger,* 497 F.2d 1092 (7th Cir. 1974).

The record shows that Coulter held thirteen different jobs in less than ten years. In all but two, he worked for two quarters or less. As the court said in *Wilson v. Richardson,* 455 F.2d 304, 307 (4th Cir. 1972), this individual's "sporadic and transitory activities may demonstrate not his ability, but his inability to engage in substantial gainful activity." *See also Shutt v. Secretary of Health, Education and Welfare,* 490 F.2d 43 (5th Cir. 1974).

Moreover, the Social Security Administration did not consider whether employment during the period under scrutiny should be considered as a "period of trial work" which under 42 U.S.C. § 422(c) is "deemed not to have been rendered by such individual in determining whether his disability has ceased in a month during such period." Since Coulter's application for benefits had been filed in 1959, he is entitled to consideration under the "trial work" exemption established by the Act. 20 C.F.R. § 404.1536.

Similarly, no consideration was given to whether the claimant came under the exemption of 20 C.F.R. § 404.1534(a) which establishes that an individual's earnings do not show the absence of a disability when he "is forced to discontinue his work activities after a short

---

**6.** In the 1967 amendments to § 223, 42 U.S.C. § 423, Congress provided that earnings above a certain amount designated by the Secretary would establish that the claimant was able to perform substantial gainful activity. 1967 U.S. Code Cong. and Admin.News, pp. 2880–83. *See Harris v. Richardson,* 450 F.2d 1099 (4th Cir. 1971). Section 158(e) of Pub.L. 90–248 provided that the amendment would apply to all applications filed in or after January, 1968.

time because his impairment precludes continuing such activities . . .." Clearly there was not a full hearing when no consideration was given to such relevant regulations.

We have alluded to the difficulty in evaluating a claimant's physical condition many years after the pertinent time. But there are ways to obtain information and the most obvious sources in this field are hospital documentations.

Records were secured from the Veterans Administration covering Mr. Coulter's treatment before 1956 and after 1968. Curiously, none were secured for the V.A. hospital admissions of 1962 and 1964 which might be expected to yield some data helpful to determine conditions in 1960. This omission is noteworthy because Mr. Coulter, before the hearing on his 1968 application, requested in writing that the Social Security Administration secure all his V.A. records since 1953. Despite the all inclusive nature of the request, only the V.A. hospital in Miami, Florida was contacted and only as to data for treatment after 1968. Having undertaken to secure some of the records in partial compliance with the claimant's request, the Administration should have secured all which he had authorized. *Kephart v. Richardson*, 505 F.2d 1085 (3d Cir. 1974).

The most glaring omission in the record, however, is the failure to review records at the Jacksonville Memorial Hospital and the South Florida State Hospital where Mr. Coulter was treated in 1958–1959. These are obvious sources of information critical to the issues involved in this case.

We recognize that the volume of disability claims is increasing and the strain that this has imposed upon the administrative machinery. We are also aware that the burden is on the claimant to produce the necessary evidence. Nevertheless, there must be some recognition of the difficulties under which Mr. Coulter is laboring and the fact that, but for the clerical errors of the Social Security Administration in years past, the data would have long since been assembled.

On remand and after preparation of a more complete record, it is possible that a determination may be made that Mr. Coulter has been disabled within the terms of the Act for some time before 1960 and up to the present. If, however, the evidence does not support such a finding, there is a further inquiry which must be made.

■ 42 U.S.C. § 423(c) reads in part as follows:

"For purposes of this section—

(1) An individual shall be insured for disability insurance benefits in any month if—

\* \* \* \* \* \*

(B)(i) if he had not less than twenty quarters of coverage during the forty-quarter period which ends with the quarter in which such month occurred

. . .

(ii) . . . For purposes of subparagraph (B) of this paragraph . . a quarter shall not be counted as part of any period if any part of such quarter was included in a period of disability unless such quarter was a quarter of coverage."

As the record now stands, Mr. Coulter is said to be covered only until September 30, 1960. The evidence may well establish that he was disabled for some period preceding the date of his first admission to the hospital in 1958 and extending to either the commencement of his work for the post office in late 1961 or the termination of any applicable period of trial work. If so, a recomputation of the date on which he last met the earnings requirement will be in order.

The logical inconsistency in determining that a disability had not existed for twelve months before September, 1960 because of activity which occurred almost two years after that date is obvious. Only if there is evidence that there was no change in the claimant's condition in 1958–1962 can such a finding be supported. None exists in this record, and the claimant's condition in 1958–1959 when he was hospitalized for a se-

ries of electroshock treatments points to a contrary conclusion.

In computing the forty-quarter period within which the individual must have earnings for twenty quarters, a quarter in a "period of disability" is not counted unless it is a quarter of coverage. The net effect of excluding any quarter of non-coverage beginning in 1958 will be to advance the date of eligibility by a corresponding three-month period.[7] If a sufficient number of quarters of non-coverage are eliminated, even if the disability was terminated by employment at the post office in 1962, the eligibility date may be extended to cover the time when the claimant became disabled.

Neither the hearing in 1969 nor the one in 1972 made any findings on this point—that is, whether the claimant could establish a "period of disability," and this is so even though the hearing examiner in 1969 identified this as an issue for resolution.

The Secretary's regulation, 20 C.F.R. § 404.310, provides that an individual is entitled to the establishment of a "period of disability" if he came within the Act's definition of disability and, as to a pre-1965 application if it were filed during the period when the incapacity existed. Coulter did file his application in 1959 and, having met the requirements of the regulation, is entitled to a determination of the issue.

If Mr. Coulter can prove that he was disabled within the meaning of the Act, he is entitled to a specification of the time limits of the disability. The same standards and considerations to which we have previously referred apply also to the factual determinations of a "period of disability." Again, the mere fact

that he worked in 1962 is not in and of itself determinative of his ability, or lack of it, to participate in substantial gainful activity in 1958, 1959, 1960 or 1961.

The failure of the 1969 proceeding to make a finding on the question of a period of disability which might well bring about a different result in this case is such error on the face of the evidence as requires the Secretary to reopen the proceedings. *See Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). Moreover, the failure to apply the relevant standards for determination of disability in the unusual circumstance of this case also mandates a reconsideration. Accordingly, the judgment of the district court will be vacated so that it can remand this matter to the Secretary for further proceedings consistent with this opinion.[8]

---

7. Coulter had accumulated 20 quarters of coverage before he was hospitalized in 1958. But his working history both before and after 1958 is so sporadic that the appropriate umbrella of 40 quarters takes him only as far as September of 1960. Eliminating quarters when he did not earn coverage will extend the period within which he may apply the 20 covered quarters.

8. Even at the expense of prolonging an already lengthy opinion, it seems appropriate to quote

from Justice Douglas' dissent in *Richardson v. Perales, supra* 402 U.S. at 413, 91 S.Ct. at 1433:

"This case is minuscule in relation to the staggering problems of the Nation. But when a grave injustice is wreaked on an individual by the presently powerful federal bureaucracy, it is a matter of concern to everyone, for these days the average man can say: 'There but for the grace of God go I.'"