**Shirley N. SHORE, Plaintiff-Appellee,**

v.

**Joseph CALIFANO, Secretary of Health, Education and Welfare, United States of America, Defendant-Appellant.**

No. 78–1280.

United States Court of Appeals, Third Circuit.

Argued Oct. 16, 1978.

Decided Dec. 12, 1978.

As Amended Feb. 8, 1978.

A. George Lowe, Special Asst. U. S. Atty., Baltimore, Md., Blair A. Griffith, U. S. Atty., Pittsburgh, Pa., Ronald R. Glancz,

Atty., U. S. Dept. of Justice, Washington, D. C., Steven L. Jones, Atty., Dept. of H. E. W., Baltimore, Md., for defendant-appellant.

June S. Schulberg, Pittsburgh, Pa., for plaintiff-appellee.

Before SEITZ, Chief Judge, GARTH, Circuit Judge and WYZANSKI, District Judge.*

## OPINION OF THE COURT

GARTH, Circuit Judge.

The question which we must answer on this appeal is: by what evidence may an applicant for Social Security retirement benefits prove that she had "self-employment income" for particular quarters during which no entries of income appear in the records of the Social Security Administration? The Act provides that:

the absence of an entry in the Secretary's records as to the self-employment income alleged to have been derived by an individual in such year shall be *conclusive* . . . that no such alleged self-employment income was derived by such individual in such year unless it is shown that he filed a tax return of his self-employment income for such year before the expiration of the time limitation . . . .

42 U.S.C. § 405(c)(4)(C) (1976) (emphasis supplied). The district court gave no effect to this conclusive presumption, ruling that it could be overcome by evidence other than an actual tax return which was timely filed. We reverse.

## I

The plaintiff, Shirley N. Shore, applied for retirement insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (1970). On July 29, 1975, she was informed that her claim had been denied by the Social Security Administration because she was not a "fully insured individual" within the meaning of section 214(a) of the Act.[1] Under that provision, Shore must have had earnings of $100 or more during each of twenty-one calendar quarters; however, the records of the Social Security Administration showed that she had reported self-employment income in only sixteen quarters.

Thereafter, Shore filed a request for reconsideration of the Secretary's decision denying her claim. She alleged that she had "new and material evidence" which demonstrated that she was self-employed during 1951–1954—years in which the Secretary's records did not show any income for her. She asked that her earnings records be corrected to show that she had income in thirty-two quarters and was therefore a "fully insured individual."

The evidence submitted to the Social Security Administration included a statement by Shore that she had filed income tax returns for the four years in question but that she had misplaced her copies of those returns.[2] A letter from the IRS stating that it did not retain returns for years prior

---

* Honorable Charles E. Wyzanski, Jr., Senior United States District Judge for the District of Massachusetts, sitting by designation.

1. Section 214(a) of the Act, 42 U.S.C. § 414(a) (1976), provides in pertinent part:
   (a) The term "fully insured individual" means any individual who had not less than—
   (1) one quarter of coverage (whenever acquired) for each calendar year elapsing after 1950 (or, if later, the year in which he attained age 21) and before the year in which he died or (if earlier) the year in which he attained age 62, except that in no case shall an individual be a fully insured individual unless he has at least 6 quarters of coverage; or
   (2) 40 quarters of coverage; or
   (3) . . .

In 42 U.S.C. § 413(a) (1976), the term "quarter of coverage" is defined as follows:
   (1) The term "quarter", and the term "calendar quarter", means a period of three calendar months ending on March 31, June 30, September 30, or December 31.
   (2) The term "quarter of coverage" means a quarter in which the individual . . . has been credited (as determined under section 412 of this title) with $100 or more of self-employment income, . . .

2. Shore's statement indicated that she had relocated her household several times since 1954, and that, as a result, her copies of the returns had been lost.

to 1968 was attached. Statements by her husband and his brother revealed that she was their partner in Shore's Photo Shop from 1951 to 1954. The accountants for the partnership stated that they had prepared the individual income tax returns for Mr. and Mrs. Shore for the years 1951 to 1954, and that the income which Mrs. Shore reported for those years was the same as her husband's. Copies of Schedule C–a (form 1040) filed by Mr. Shore showed that he had reported income in excess of $100 for each quarter of the four years.

After considering this evidence, the Social Security Administration refused to revise its original determination. The accountants' statements were not credited, because their "recollection of the particulars of accounting services that took place many years ago is not convincing evidence". The Secretary also took the position that self-employment income not shown in the agency's records may be proven only by "an actual tax return" timely filed for the year in question.

Shore's claim was then submitted to an administrative law judge for a decision based on the evidence in the file. On October 26, 1976, the administrative law judge concluded, as a matter of law, that Shore's evidence could not be considered and, therefore, denied her claims:

> . . . since the claimant did not produce evidence in the form of tax returns or portions thereof timely filed for the years in question, the claimant cannot be credited with any self-employment income for Social Security purposes pursuant to section 205(c)(4)(C) of the Social Security Act, as amended.

3. On March 15, 1977, the decision of the administrative law judge was affirmed by the Appeals Council.

4. The magistrate found that the "most telling" evidence in the record was the "Reconciliation of Net Worth" prepared by an accountant for the partnership. It purported to show that in 1951 Mr. and Mrs. Shore had a combined income from their business of $8,992. Mr. Shore's income tax return for that same year disclosed self-employment earnings of exactly

After the Secretary's decision had become final,[3] Shore brought this action in the Western District of Pennsylvania for review of that decision pursuant to 42 U.S.C. § 405(g) (1976). The case was referred to a magistrate, who concluded that the Secretary should have considered Shore's evidence of additional self-employment income during 1951–1954. He further concluded from a review of this evidence that the "plaintiff has proven by a preponderance . . . that she was self-employed during the period in question."[4] In an Order dated November 30, 1977, the district court denied the Secretary's motion for summary judgment, granted Shore's motion for summary judgment and directed the Secretary to award benefits to the plaintiff.

The Secretary has appealed from this Order.

## II

### A

The Secretary is required by 42 U.S.C. § 405(c)(2)(A) (1976) to maintain records of personal income. An individual's records are available to him[5] and are subject to correction if an application is made within three years, three months and fifteen days after the year in question.[6] However, once that time limitation has expired—as it has in this case—the statute provides that the Secretary

> . . . may . . . include in his records . . . any omitted item of . . . self-employment income but only—
>
> . · · · · ·
>
> (F) to conform his records to—

half that amount ($4,496). Because of the result which we reach in this case, there is no need for us to consider this evidence. We observe only that there are apparent conflicts in the evidence regarding the partnership interests of Shore, her husband, and his brother.

5. 42 U.S.C. § 405(c)(2)(A) (1976).

6. 42 U.S.C. § 405(c)(4), (c)(1)(B) (1976).

(i) tax returns or portions thereof (including information returns and other written statements) filed with the Commissioner of Internal Revenue

.   .   .

.   .   .   .   .

except that no amount of self-employment income of an individual for any taxable year (if such return or statement was filed after the expiration of the time limitation following the taxable year) shall be included in the Secretary's records pursuant to this subparagraph;

42 U.S.C. § 405(c)(5)(F) (1976).

As we have indicated earlier, the statute also prescribes the evidentiary weight to be given to these records "[a]fter the expiration of the time limitation following any year—"

(C) the absence of an entry in the Secretary's records as to the self-employment income alleged to have been derived by an individual in such year shall be conclusive for the purposes of this subchapter that no such alleged self-employment income was derived by such individual in such year unless it is shown that he filed a tax return of his self-employment income for such year before the expiration of the time limitation following such year, in which case the Secretary shall include in his records the self-employ-

ment income of such individual for such year.

42 U.S.C. § 405(c)(4)(C) (1976).

The Secretary is authorized to make regulations governing "the nature and extent of the proofs and evidence . . . to establish the right to benefits hereunder." 42 U.S.C. § 405(a) (1976). The regulations promulgated by the Secretary track the statute in almost identical language. *See* 20 C.F.R. § 404.804(c) (1978)[7] [following 42 U.S.C. § 405(c)(4)(C)]; 20 C.F.R. § 404.806(f) (1978)[8] [following 42 U.S.C. § 405(c)(5)(F)]. In addition, 20 C.F.R. § 404.807(b) (1978), provides that:

*Tax returns of self-employment income —(1) Tax returns filed before expiration of time limitation.* Where action is taken to conform a record of earnings with a tax return of self-employment income filed by an individual with the Commissioner of Internal Revenue before the expiration of the time limitation following any taxable year (see § 404.804(c)), the Administration shall incorporate into its records the self-employment income of such individual for such year *as evidenced by such tax return or some portion thereof* . . .

(emphasis supplied).

Shore has not argued that the regulations enacted under the statute are invalid; rather, she would have us interpret them to allow proof of self-employment income, not

---

7.   20 C.F.R. § 404.804 *Records to be evidence.* For the purpose of proceedings before the Secretary or any court, such records shall, as provided in this Subpart I, be evidence of the amounts of earnings of such individual and the periods of such earnings. The absence of an entry as to an individual's earnings with respect to any period shall be evidence that the individual had no earnings in such period. After the expiration of the time limitation, as defined in § 404.801(c), following any year:

.   .   .   .   .

(c) The absence of an entry in the Administration's records as to the self-employment income alleged to have been derived by an individual in such year shall be conclusive that no such income was derived by such individual in such year unless it is shown that he filed a tax return of his self-employment income for such year *before* the expiration of the time limitation following such year. See

§ 404.807(b) with respect to conforming earnings records to tax returns of self-employment income.

8.   20 C.F.R. § 404.806 *Revision of Records of Earnings After Expiration of Time Limitation.* After the expiration of the time limitation following any year in which an individual had earnings or is alleged to have had earnings the Administration may change or delete any entry of earnings in its records for such year for such individual or include in its records for such year an individual's earnings which had been omitted but *only*:

.   .   .

(f) Except as provided in § 404.807, to conform its records to *tax returns* or portions thereof (including information returns and other written statements) *filed with the Commissioner of Internal Revenue* . . .

(emphasis supplied)

by the statutorily prescribed method, but by the best available evidence. The district court apparently adopted this view of the regulations. We are unable to agree that this is the proper interpretation of the statute and the regulations made pursuant to it.

B

The Secretary's interpretation of 20 C.F.R. § 404.804(c), .806(f), .807(b) (1978), is that once the time limitation for correction of earnings records has expired, a claimant may establish that she had unrecorded self-employment income only by the submission of an actual income tax return which was timely filed. If the claimant's return for that year is not available, the Secretary's records are deemed conclusive. Shore, on the other hand, contends that this interpretation of the regulations would not be faithful to "the beneficent purposes of the [Act]". *Hess v. Secretary of Health, Education and Welfare,* 497 F.2d 837, 840 (3d Cir. 1974). Although the purpose of the Act would lead us to construe it in favor of a claimant when that is logically possible, there are other legislative concerns meriting consideration.

The district court failed to consider the nature of the statutory scheme as it relates to claims based on self-employment income. This is evident from its reliance on our decision in *Kephart v. Richardson,* 505 F.2d 1085 (3d Cir. 1974), in support of its ruling that "the absence of an entry in the Secretary's records does not bar recovery of benefits but is merely one evidentiary factor to be considered." In *Kephart,* we held that a claimant who "alleges that he did in fact work during a given period of time for which the government's records are silent . . . is entitled to substantiate his position and . . . this evidence must be given consideration by the Social Security Administration."[9] However, the claimant in *Kephart* had alleged the receipt of unrecorded *wages.* Hence, Judge Weis in writing for the *Kephart* court was interpreting

subsection (B) of 42 U.S.C. § 405(c)(4) which provides:

> the absence of an entry in the Secretary's records as to the *wages* alleged to have been paid by an employer to an individual during any period in such year shall be *presumptive evidence* for the purpose of this subchapter that no such *alleged wages* were paid to such individual in such period;

(emphasis supplied).

Here, on the other hand, we are concerned with "self-employment income", not "wages", and we are therefore governed by subsection (C) of 42 U.S.C. § 405(c)(4). This marks a crucial difference, because under subsection (B), the absence of an entry of *wage* income creates a mere "presumption", whereas, under (C), the absence of an entry of *self-employment* income is "conclusive".[10] This distinction between the evidentiary effect accorded to the absence of an entry of *wages* as opposed to *self-employment* income was articulated in *Singer v. Weinberger,* 513 F.2d 176, 177–78 (9th Cir. 1975):

> Section 405(c)(3) gives three different effects to the absence of entries of income in the Secretary's records: (1) within 3 years, 3 months, and 15 days after expiration of the qualifying year (§ 405(c)(1)(A), (B)) the absence of entries of either wages or self-employment income is evidence that no such wages or earnings were received;[2] (2) after the statutory limitation period, the absence of entry of wages in the Secretary's records creates a rebuttable presumption that no such wages were paid[3] [citations omitted]; (3) after the limitation period, the absence of entry of self-employment income in the Secretary's records, *coupled with an absence of the claimant's tax returns showing such income*, creates a conclusive presumption that no such income was received.[4]

Singer's attempt to prove self-employment income was foreclosed by the conclusive presumption against him. However, he was confronted with a rebut-

---

**9.** 505 F.2d at 1088.

**10.** *See* pp. 1234–1235 *supra.*

table, rather than a conclusive, presumption that he had not received wages during the quarters unrecorded by the Secretary.

(emphasis supplied and footnotes omitted).

The differing treatment accorded to wage and self-employment income by subsections (B) and (C) of section 405(c)(4) is explained by the degree of control that each group of claimants has over its reporting. Congress was concerned that if employees were not permitted to rebut the Secretary's records, they would be penalized for the negligence of their employers who had failed to report wage payments. This concern is not relevant to self-employed claimants, however, inasmuch as self-employed claimants control and are responsible for their own income tax and social security reporting.[11]

The legislative history of the Act reveals that the provisions relating to the reporting of self-employment income resulted from a very different Congressional policy. The Report of the Senate Committee on Finance

on the 1950 amendments to the Act indicates that the crucial factor in the decision to include self-employed persons in the retirement insurance system was the development of a workable mechanism for determining their earnings. Prior to 1950, self-employed persons were not covered by Social Security because "there was no agreement on a feasible method of obtaining . . . reports of their income."[12] The Senate Report explains the rationale for extension of the Act's coverage:[13]

Practicable administrative procedures for coverage of the self-employed have been developed. An individual would report his self-employment income by transferring certain information from the trade or business schedule of his income-tax return to a social-security schedule on the same return.

In testimony before the House Committee on Ways and Means, the Commissioner for the Social Security Administration stated that the use of income tax reporting was vital to the decision to include self-employed persons in the system:[14]

11. In *Breeden v. Weinberger*, 493 F.2d 1002, 1006 (4th Cir. 1974), the court discussed the differing policy considerations relevant to the treatment of wage and self-employment income records:

The progression of evidentiary value embodied in the Social Security Act—evidence, presumptive evidence, and conclusive effect—suggests that the provision concerning blank wage records reflects congressional sensitivity to the need to balance two somewhat conflicting purposes. One purpose, akin to the supposed rationale for statutes of limitation, is to guard against false claims after contradictory evidence is unavailable. But Congress did not write a statute of limitations for contradicting blank wage records, as it did for self-employment income reports. The different treatment afforded to blank wage records suggests a second purpose—that Congress intended *not* to penalize wage earners for the carelessness or dishonesty of their employers.

12. Proposed Amendments to the Social Security Act: Hearings on H.R. 2892 before the House Committee on Ways and Means, 81st Cong. 1st Sess. 1084 (1949) (statement of Dr. Arthur Altmeyer).

13. S.Rep. No. 1669, 81st Cong., 2d Sess., *reprinted in* [1950] U.S. Code Cong. Serv. pp. 3287, 3299.

14. Proposed Amendments to the Social Security Act: Hearings on H.R. 2893 before the House Committee on Ways and Means, 81st Cong. 1st Sess. 1081, 1084 (1949) (Statement of Dr. Arthur Altmeyer). Dr. Altmeyer described how the retirement insurance system would be administered in the case of self-employed persons:

Therefore, there are no insuperable administrative problems which would prevent extension of coverage to the self-employed.

The Federal Security Agency and the Treasury Department believe that a one-page form can be devised which would be simple for the taxpayer and which would present no major difficulties in administration for the Federal Government. Net income from self-employment could be determined entirely on the basis of two figures already included in the income-tax return, namely, income from business or profession (schedule C), and income from partnerships (schedule E).

Based on the experience of the Treasury Department with the taxation of low- and middle-income groups in recent years, it is our opinion that the coverage of the self-employed can be accomplished simply, effectively, and economically at this time.

*Id.* at 1085.

Experience gained in the administration of the income-tax law has made it possible to develop adequate methods of meeting the

The self-employed were excluded from the original program largely because, at that time, there was no agreement on a feasible method of obtaining such reports of their income. Subsequent developments have indicated that most self-employed persons can report their income, for purposes of coverage, as a part of their income-tax returns.

In sum, the creation of an administratively feasible mode for determining the eligibility of self-employed claimants was a paramount legislative concern in 1950. Reliance on income tax returns was regarded as the only workable plan. This view is manifested in 42 U.S.C. §§ 405(c)(5)(F), (c)(4)(C) (1976), which provides that social security records may be corrected only by reference to a timely filed income tax return.[15]

### C

The interpretation given to the regulations by the district court would impair the administration of reporting and claims processing for self-employed persons. Claimants who alleged that they had reported income for years in which IRS records are not available could rely on testimonial evidence of their income in those years. Since the Secretary would seldom be able to rebut this evidence, claims based on stale or anecdotal evidence would be approved.[16] This would deprive the Secretary's records of the "conclusive" effect which Congress had intended. It would also blur—if not eliminate—the distinction drawn by the Act between correction of the Secretary's records before and after the "time limitation" of section 405(c)(4) has run.[17] The reliance on income tax reporting which Congress viewed as the key to a manageable system of retirement insurance for the self-employed would be significantly undermined.[18] The Court of Appeals for the Fifth Circuit has refused to require the Secretary to consider evidence of self-employment income other than a properly completed and filed tax return:[19]

> problems involved in coverage of the self-employed.
>  Reporting: Contributions and benefits would be based on income from self-employment. For both the self-employed person and the Government, the simplest way of reporting such income is as part of the income-tax return.
>
> .     .     .     .     .
>
>  Net income from self-employment: Net income from self-employment would be determined entirely on the basis of two figures already included in the income-tax return, namely, income from business or profession (schedule C), and income from partnerships (schedule E).
>
> *Id.* at 1162.

15. *See* pp. 1234–1235 *supra.*

16. The Court of Appeals for the Fourth Circuit has characterized section 405(c)(4) as a "statute of limitations for contradicting blank . . self-employment income reports," which was intended "to guard against false claims after contradictory evidence is unavailable." *See Breeden v. Weinberger,* 493 F.2d 1002, 1006 (1974).

17. *See* pp. 1234–1235 *supra.*

18. *See Lasch v. Richardson,* 457 F.2d 435, 440 (7th Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 160, 34 L.Ed.2d 146 (1972):

> It is unfortunate that plaintiff must go without the insurance benefits. But the immensity of the problem of providing Social Security "called forth a highly complex and interrelated statutory structure." The mandate to the Secretary in 42 U.S.C. § 405(c)(2) to maintain HEW records of self-employment income was necessary for the determination in an orderly manner of the innumerable requests for insurance benefits. Congress recognized that a beginning and end of time for establishing eligibility was an essential part of that need by prescribing a "time limitation" within which changes and revisions in the Secretary's records might be made. See *Crawford v. Cohen,* 295 F.Supp. 624 (D.S.C. 1969). One need only be reasonable to foresee the disaster in HEW if there were not a reasonable time limitation for ending disputes about eligibility benefits.

19. In *Martlew* the claimant had filed an income tax return without a completed Schedule C. Therefore, the Secretary's records did not show any self-employment income during that year. The claimant attempted to prove, by submitting his Form 1040, that he had reported self-employment income for that year. The Court upheld the Secretary's refusal to consider this evidence, stating that "only a properly-completed Form 1040 income tax return (including a completed Schedule C or its substantial equivalent) is regarded as sufficient [evidence]." *Id.* at 888.

Affirmance of the district court's decision is called for here in order to avoid frustration of the statutory standards of record keeping and reporting established by the Social Security Act. These standards are founded upon policies lying at the very heart of the operation of the Act. Appellant's reporting in no way measures up to these standards, and thus his claim to coverage must fail. A holding in this case that appellant adequately reported his partnership income would undermine unequivocal statutory provisions and the Secretary's power to enforce them.

*Martlew v. Celebrezze*, 320 F.2d 887, 890 (5th Cir. 1963).

■ There is a further consideration which also leads us to adopt the Secretary's interpretation of 20 C.F.R. § 404.-804(c), .806(f), .807(b) (1978). The Secretary's interpretation of his department's regulations is entitled to great respect if it "sensibly conforms to the purpose and wording of the regulations." *Northern Indiana Public Service Co. v. Izaak Walton League*, 423 U.S. 12, 15, 96 S.Ct. 172, 174, 46 L.Ed.2d 156 (1975).[20] This is especially so where the administration of income reporting and claim processing is involved.[21] In these areas, the Social Security Administration has, by dint of long experience, come to have special expertise, and its view of what

procedures are manageable must be considered.

**D**

■ If we are to give effect to the Congressional mandate that income tax reporting is the only manageable method for ascertaining the income of self-employed claimants, we must uphold the Secretary's interpretation of 20 C.F.R. § 404.-804(c), .806(f), .807(b) (1978), which conforms fully with that direction. For this reason, we hold that a claimant may show that she had self-employment income during quarters for which the Secretary's records show none, only by submitting a timely filed income tax return.[22] Since Shore did not, and cannot, produce her returns for the years 1951–1954, the Secretary's decision denying her benefits must be affirmed.[23]

The order of the district court will be reversed with the directions that the district court vacate its order granting summary judgment for Shore and in lieu thereof, enter an order granting summary judgment in favor of the Secretary.

---

**20.** Where "the Secretary's interpretation has been consistently followed . . . [and] [t]here is no suggestion that this interpretation is not completely consistent with the governing statute, [t]he Secretary's interpretation of his own regulation is therefore entitled to great respect." *Blew v. Richardson*, 484 F.2d 889, 893 (7th Cir. 1973).

**21.** *See Martlew v. Celebrezze*, 320 F.2d 887 (5th Cir. 1963).

**22.** The Court of Appeals for the Ninth Circuit reached this result without extensive discussion in *Singer v. Weinberger*, 513 F.2d 176, 177 (1975):

**23.** This case does not present a factual context in which the claimant has submitted a *copy* of her income tax return with satisfactory evidence that the *original* was filed. Therefore, we do not decide that issue.

. . . after the limitation period, the absence of entry of self-employment income in the Secretary's records, coupled with an ab-

sence of the claimant's tax returns showing such income, creates a conclusive presumption that no such income was received. (footnote omitted). The plaintiff has relied on *Rasmussen v. Gardner,* 374 F.2d 589 (10th Cir. 1967). That case, however, does not cite or discuss section 405(c)(4). The claimant contended that the income which *he had reported* as his own was in fact the income of a partnership with his wife, and that accordingly half of the *reported* income should have been credited to his wife. The hearing examiner denied the claim, because he found that no partnership existed. The court held that there was a partnership and therefore reversed. Hence, the *is-sue* decided by the court was whether a partnership existed. Moreover, the case involved reallocation of previously reported income, *see* 42 U.S.C. § 405(c)(5)(G) (1976), rather than a claim founded on earnings which had never been reported to the Social Security Administration.