**Angelina MATTA, Plaintiff, Appellant,**

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.**

**No. 86–1237.**

United States Court of Appeals, First Circuit.

Submitted Sept. 12, 1986.

Decided Oct. 9, 1986.

---

Rafael Carreras-Valle, Rio Piedras, P.R., on brief, for plaintiff, appellant.

Gabriel E. DePass, Office of the General Counsel, Social Sec. Div., Dept. of Health and Human Services, Baltimore, Md., Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., Donald A. Gonya, Chief Counsel for Social Sec., Randolph W. Gaines, Deputy Chief Counsel for Social Sec. Litigation, Baltimore, Md., and John M. Sacchetti, Chief, Retirement and Survivors Ins. Litigation Branch, Washington, D.C., on brief, for defendant, appellee.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

PER CURIAM.

The issue here is whether claimant has the necessary number of quarters of coverage. She needs 26, but the Secretary, disbelieving claimant's contention that she has been self-employed in her home for many years selling cookies, candies, ices, and coconuts, found she had only 15. The Secretary's decision is clearly supported by substantial evidence.

Claimant first applied for benefits in 1975. She stated that she had inquired in 1972 about coverage, had been told she needed more quarters, and had been advised to start her own business. She then

began selling candy and coconuts and other items from her home. In support of her claim of self-employment, she submitted tax returns for 1973 and 1974 showing net earnings from self-employment of $2,600 and $2,400. Social Security investigated her claim by visiting her home and talking with neighbors. Claimant's home had no sign advertising any product, she had no counter or separate room in her home for commercial activities, she could only show the investigator two or three dollars worth of candy, she had no receipts, and the neighbors reported claimant was not engaged in commercial activities. To earn one quarter of coverage, claimant needed at least $400 net earnings from self-employment. Based on the foregoing, the agency concluded claimant had not engaged in any commercial activity which could net the necessary amount and rejected the claim of self-employment. Claimant did not seek further administrative or judicial review. Hence, the 1975 decision concluding that claimant had not been self-employed in 1973 and 1974 is final and cannot now be challenged. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Were the matter before us, however, we would readily reject claimant's argument that the agency should have accepted the income tax returns at face value.

Claimant filed a second application for benefits on March 13, 1978. In response to questions 13 and 14 on the form, claimant answered she was not self-employed in 1978 or 1977, but had been in 1976. This application, too, was denied, and claimant does not appear to have sought review. Claimant filed her third application for benefits, the one that is before us now, on May 12, 1981. This application stated claimant was not self-employed in 1981, 1980, or 1979.

■ Despite the declarations on her 1978 and 1981 applications that she had not been self-employed since 1976, claimant filed, on May 18, 1981, tax returns for 1978, 1979, and 1980 showing net self-employment earnings of $450 in each of these years. A return filed on January 19, 1981 showed $2,400 self-employment income for 1977. When questioned about the tax returns, claimant stated as follows:

"As to the tax returns for 1977, 1978, 1979, and 1980, the IRS officer made some computations (according to some other tax returns I had previously filed) and reported the figures shown on them. The fact is I do not really know where the $2,400 amount comes from for 1977. I think based on my own memory that at least I netted said amount, but I never kept any type of record...."

Claimant also submitted signed statements from her suppliers. Just as claimant's own statements lacked consistency, so did the statements from claimant's supposed chief supplier, Jose Elias Ortiz. On May 21, 1981 he wrote that claimant purchases $25 per week in "candies and miscellany" at his establishment, and on June 14, 1982 he wrote that claimant had been purchasing $50 worth of candy per week since 1973. Several other suppliers and a customer also submitted brief statements. No business records of any substance were produced.

Given claimant's conflicting statements, her vague testimony, and the lack of even the most rudimentary business records to back up the claim of self-employment earnings, it is not surprising that the Secretary concluded claimant had not actually received self-employment income in excess of $400. We think the conclusion is amply supported.

■ Relying on 42 U.S.C. § 405(c)(4)(C), claimant contends the Secretary was required to accept claimant's tax returns and to conclude claimant had self-employment earnings in the amounts stated therein. Section 405(c)(4)(C) provides as follows:

"(4) Prior to the expiration of the time limitation following any year the Secretary, may, if it is brought to his attention that ... any item of ... self-employment income for such year has been omitted from [the Secretary's] records, ... include such omitted item in his

records.... After the expiration of the time limitation following any year _____

.    .    .    .    .

(c) the absence of an entry in the Secretary's records as to the self-employment income alleged to have been derived by an individual in such year shall be conclusive for the purposes of this title that no such alleged self-employment income was derived by such individual in such year unless it is shown that he filed a tax return of his self-employment income for such year before the expiration of the time limitation following said year, *in which case the Secretary shall include in his records the self-employment income of such individual for such year."* (Emphasis added).

In effect, claimant apparently reads the underlined portion to require the Secretary to accept as self-employment income the figures a claimant has stated in his tax returns. We disagree with claimant's reading. A brief overview of subsection (c) shows claimant has read too much into the statute.

Subsection (c) in general deals with records. Sub-subsection (2)(A) (i.e., 42 U.S.C. § 405(c)(2)(A)) directs the Secretary to keep records of wages and self-employment income, but specifically permits the Secretary to require "such verification ... as he deems necessary" of the information submitted to him. Sub-subsection (3) (i.e., 42 U.S.C. § 405(c)(3)) says that the Secretary's records constitute evidence of a claimant's wages or self-employment earnings. And ·sub-subsection (4) (42 U.S.C. § 405(c)(4)) deals with what weight the Secretary's records will have. As sub-subsection (4) indicates, *prior* to the expiration of the time limitation—and "time limitation" means 3 years, 3 months, and 15 days, 42 U.S.C. 405(c)(1)(B)—the Secretary may correct errors in his records brought to his attention. If an erroneous omission of self-employment income in a particular year is not uncovered until *after* the time limitation expires, the Secretary's erroneous record will nevertheless be "conclusive"

unless it is shown that a tax return was filed before the expiration of the time limitation following such year. 42 U.S.C. § 405(c)(4)(C). In other words, absent the filing of a tax return within the allotted time, the Secretary's allegedly erroneous record would be "conclusive"; but if the return is timely filed, the conclusive presumption of correctness does not obtain and the Secretary is permitted to correct his records. While in the latter case the Secretary "shall include in his records the self-employment income of such individual for such year," there is nothing in the statute which requires the Secretary to conclude that the individual's self-employment income is as stated in the tax return. Rather, the Secretary may require "such verification ... as he deems necessary," 42 U.S.C. § 405(c)(2)(A), and determine what, if any, self-employment income the individual actually realized. *Accord, Gardner v. Heckler,* 777 F.2d 987, 991 (5th Cir.1985).

■ Claimant's other arguments are equally weak. Because claimant's hearing lasted for only eleven minutes and then was continued and lasted only 22 minutes the next time, claimant contends the Administrative Law Judge (ALJ) failed "[a]t the hearing ... to look [ ] fully into the issues." 20 C.F.R. § 404.944. We disagree. Claimant was represented by present counsel at the hearings. Counsel had the opportunity to present whatever testimony he wished. The ALJ was not required to usurp counsel's role. As for the first ALJ's suggestion that affidavits be obtained from suppliers, claimant did not object and thereafter was afforded a hearing at which she could have presented the suppliers' testimony had she so chosen. We have considered the rest of claimant's points and find none of them meritorious.

*Affirmed.*