**Bahija JABBAR, Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.**

No. 87–1059.

United States Court of Appeals, Sixth Circuit.

Argued March 22, 1988.

Decided Aug. 23, 1988.

Lawrence M. Halman (argued), Southfield, Mich., for plaintiff-appellant.

Pamela Thompson, Asst. U.S. Atty., Detroit, Mich., Robert E. Hanson (argued), Dept. of HHS, Chicago, Ill., for defendant-appellee.

Before JONES, MILBURN, and BOGGS, Circuit Judges.

PER CURIAM.

Abed Jabbar, an immigrant with a wife and two young children, was killed in a traffic accident on February 17, 1979, at age 22. Abed's widow, Bahija Jabbar, filed for surviving child's insurance benefits and mother's insurance benefits based on her husband's employment record. The Secretary ruled that Abed did not have enough quarters of coverage to qualify his wife and children for benefits, based on the Secretary's rejection of claimed "self-employment income" for 1977 and 1978. The Secretary reached this decision despite the existence of income tax returns, which Abed had filed with the Internal Revenue Service ("IRS"), reflecting the payment of taxes on

the claimed income for those years. The district court affirmed.

We find the evidence presented of self-employment income to be sufficient under the statute, 42 U.S.C. § 405(c)(4)(C), and the Secretary's regulations, 20 C.F.R. §§ 404.803(c)(3); 404.822(b)(2)(i). Since there is no substantial evidence to the contrary, we reverse.

## I

Plaintiff Bahija Jabbar and her husband came to the United States in October 1976. After working at a few odd jobs, Abed began working as a self-employed salesman, selling watches and jewelry. He purchased merchandise wholesale from Beit Hanina Trading Corporation in New York and resold the goods in Ohio and Texas.

In early 1979, Abed asked his brother-in-law, Nozmi Elder, about a W–2 (tax-withholding) form. Elder explained the tax system, helped Abed get his papers together, and instructed him to go to a "tax office" to have his returns prepared. Frank Barkovich, an accountant, testified that he prepared Abed Jabbar's tax returns for 1977 and 1978 on the basis of information that Jabbar had supplied. Barkovich also stated that he received "substantiation of income" from Abed, such as mileage, telephone and sales receipts. The returns were prepared on February 1, 1979. Abed signed the returns and paid the tax on February 7.

After Abed's death on February 17, Elder found copies of Abed's bills and tax returns in a drawer. In addition, there were receipts for money orders which had been sent to the IRS as payment for taxes owed.

The plaintiff recalled her husband asking her to sign some tax forms in early 1979. At the administrative hearing, she produced copies of tax returns that showed net earnings from self-employment for 1977–78 in amounts sufficient to provide the necessary number of quarters of coverage to qualify for survivor's benefits. The returns, which were received from the IRS, were signed by Frank Barkovich and Abed Jabbar. Plaintiff also submitted receipts

for money orders, made payable to the IRS, reflecting the amount of taxes due for each year.

The administrative record also contains documentary evidence from the Social Security Administration regarding Abed Jabbar's earnings. His earnings record showed that he had no qualifying quarters of coverage.

## II

The legal principles involved are fairly clear. Pursuant to 42 U.S.C. § 405(c)(2)(A), the Secretary must maintain records of personal income. These records are subject to correction if an application is made within three years, three months and fifteen days (hereinafter referred to as the "time limitation") after the year in question. 42 U.S.C. § 405(c)(4), (c)(1)(B). Once the time limitation has expired, as in this case, the statute provides that the Secretary may include in his records any omitted item of self-employment income, but only to conform his records to tax returns or portions thereof filed with the IRS during the time limitation. 42 U.S.C. § 405(c)(5)(F)(i). According to 42 U.S.C. § 405(c)(4)(C), which is central to this case:

> the absence of an entry in the Secretary's records as to the self-employment income alleged to have been derived by an individual in such year shall be conclusive for the purposes of this subchapter that no such alleged self-employment income was derived by such individual in such year *unless it is shown that he filed a tax return for his self-employment income for such year before the expiration of the time limitation following such year, in which case the Secretary shall include in his records the self-employment income of such individual for such year.* (emphasis added)

*See also* 20 C.F.R. § 404.803(c)(3); 404.-822(b)(2)(i). Although the Secretary may not include in his records any omitted item of self-employment income if the tax returns were filed *after* the expiration of the time limitation, 42 U.S.C. § 404(c)(5)(F);

*Burke v. Secretary of Health and Human Services*, 680 F.2d 1128, 1130 (6th Cir.1982), the tax returns in this case were filed no more than two years after the income was earned. Thus, the timing requirement is clearly met, if the tax returns are accepted as genuine.

Plaintiff contends that she has met the requirements of section 405(c)(4)(C): 1) the Secretary's records do not show entries for self-employment income for Abed Jabbar for 1977 or 1978; 2) the time limitation for both years has expired; and 3) she has presented tax returns for those years filed with the IRS within the time limitation for both years. From this, she argues that section 405(c)(4)(C) requires the Secretary to amend his records.

The Secretary argues that the claimant must present tax returns, but that alone is not enough. He asserts that the statute does not require him to credit the amount of self-employment income in the tax returns; that it is his prerogative to require verification of the information supplied in an individual's tax returns and to determine the actual amount of income. Consistent with this view, the Secretary has ruled that the evidence of income as provided by the tax returns is unconvincing.

### III

■ The first issue involves statutory interpretation: Does section 405(c)(4)(C) *require* the Secretary to correct his records to conform to tax returns filed within the time limitation, or merely permit him to do so? A strict reading of the statute would support the plaintiff. The operative language of section 405(c)(4)(C) says that, if the claimant files a tax return of his self-employment before the expiration of the time limitation, the "Secretary *shall* include in his records the self-employment income of such individual for such year." (emphasis added) This is the interpretation adopted by the Second Circuit in *Hollman v. Department of Health and Human Services*, 696 F.2d 13 (2d Cir.1982).

The First Circuit, however, has taken a different approach, more in accord with the Secretary's position. In *Matta v. Secre-tary of Health and Human Services*, 806 F.2d 287 (1st Cir.1986), the court of appeals said that "there is nothing in the statute [including section 405(c)(4)(C)] which requires the Secretary to conclude that the individual's self-employment income is as stated in the tax return." *Id.* at 290. Rather, "the Secretary may require 'such verification ... as he deems necessary,' 42 U.S.C. § 405(c)(2)(A), and determine what, if any, self-employment income the individual actually realized." *Ibid.* (citation omitted).

Relying on the plain language of the statute and its legislative history, we conclude that the approach in *Hollman* is the better one. First, the language of 405(c)(4)(C) is unequivocal: if a timely filed tax return contains "self-employment income," the Secretary *shall* include in his records the "self-employment income" of the return. It does not say that the Secretary "may" include such income, or that he shall include such income but only after verification.

The language relied upon in *Matta*, referring to "verification," is not present in section 405(c)(4)(C), but in section 405(c)(2)(A), which is concerned with the Secretary's duty to maintain records of wages and self-employment income in the first place, and not with amendment of those records by a claimant. The absence of "verification" language in section 405(c)(4)(C) is very probative, in our view.

The statute's legislative history supports this interpretation. Prior to 1950, those who were self-employed were not included in the social security system because there was no agreement on a feasible method of obtaining reports of their income. *Weisbraut v. Secretary of Health and Human Services*, 757 F.2d 83, 85 (3d Cir.), *cert. denied*, 474 U.S. 852, 106 S.Ct. 152, 88 L.Ed.2d 125 (1985). By 1950, however, a consensus had been reached that the federal income tax reporting system would allow Congress to extend social security benefits to the self-employed. *Shore v. Califano*, 589 F.2d 1232, 1237–38 (3d Cir.1978). As the court noted in *Shore*, 589 F.2d at 1238, "[r]eliance on income tax returns was re-

garded as the only workable plan." The legislative history thus reveals Congress's determination that tax returns would provide a reliable vehicle for ascertaining self-employment income. Section 405(c)(4)(C) reflects this idea, by indicating that timely filed tax returns are necessary to amend the Secretary's records. It would be anomalous if a timely filed tax return, which Congress viewed as sufficient to bring self-employed persons into the social security system, were insufficient to allow a claimant to have the Secretary amend the records of that system.

A timely tax return generally provides sufficient safeguards against fraud or abuse, thereby "avoiding difficult, after-the-fact litigation which would likely not be submissible to concrete proof." *Burke v. Secretary of Health and Human Services*, 680 F.2d 1128, 1130 (6th Cir.1982). The filing of a return not only subjects the individual to tax liability, but also to both civil and criminal penalties for reporting incorrect information.

## IV

■ Of course, the Secretary is not required to accept records that have been filed fraudulently. *See* 42 U.S.C. § 405(c)(5)(E). At most, however, the claimant could be required to show "convincing" evidence of the regularity of the documents and the accuracy of their contents. 20 C.F.R. § 404.708.

In considering whether this standard has been met, the Secretary will look to several factors: 1) whether the information contained in the evidence was given by a person in a position to know the facts; 2) whether there was any reason to give false information when the evidence was created; 3) whether the information contained in the evidence was given under oath, with witnesses present or with knowledge that there was a penalty for giving false information; 4) whether the evidence was created at the time the event took place or shortly thereafter; 5) whether the evidence had been altered or had any erasures; and 6) whether the information contained in the evidence agreed with other available evidence, including the Secretary's records. 20 C.F.R. § 404.708.

These factors establish that the tax returns are "convincing." As the worker, Abed was clearly in the best position to know what his sales and expenses were. If Abed had any incentive to provide false information in the returns, it would have been to understate the gross income and overstate expenses to decrease his tax liability. The returns were signed with knowledge of the penalty for giving false information, and they were prepared shortly after the events in question. There were no signs of alterations or erasures. Finally, as noted, the returns were corroborated by the money order receipts and the accountant's testimony. The Secretary should have found the tax returns to be convincing.

The Secretary purports to remain unconvinced that the income was actually earned. There certainly may be circumstances where the filing of forms and even the payment of taxes may not be evidence that the underlying income was actually earned. Our welfare and social benefits regulations are such that sometimes it may be sensible to make even unnecessary payments in order to gain access to certain benefits. Here, however, there is nothing that would lend any credence to a suspicion that Abed voluntarily paid taxes despite having earned no income on which those taxes would be based. If the forms were indeed signed and the taxes paid when stated, and Barkovich's testimony as well as the presumption of regularity of official documents would indicate that to be the case, it is very difficult to believe there was a fraudulent motive involved. Jabbar was a young man, apparently in good health and with a long life expectancy. As it turned out, he was killed in an automobile accident within two weeks of having paid taxes, and the filing of the returns in question was a very wise and prudent step to have taken. However, there is no evidence that he was voluntarily making unnecessary payments to the government in order to create a nebulous possibility of entitlement for his family in the distant future.

If there were a fraudulent scheme involved here, the much more likely scenario would be that the tax documents were created by others after Jabbar's death and fraudulently backdated. However, there is not the slightest hint of evidence to support such a theory, however plausible it might be. The government should have within its possession documents indicating whether the tax payments were in fact received from Jabbar, and no evidence has been introduced indicating that they were not. The government should have in its possession Social Security card applications and other documents indicating Jabbar's signature, and no evidence was introduced showing that the signature on the form was not his. There was no evidence introduced to counter Barkovich's statements as to the circumstances of the filing of the forms, nor did the ALJ or the Appeals Council give any reason to doubt his credibility.

In short, we have a case where the circumstances worked out to the benefit of the claimant, perhaps a bit too neatly for the Secretary's taste. However, under the statute and the Secretary's regulations, there is no substantial evidence to support the Secretary's decision denying benefits. The judgment of the district court is therefore REVERSED and the case is REMANDED with directions to remand to the Secretary for an award of benefits.