Henry BLOHM, Plaintiff,

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

No. CV87–L–641.

United States District Court, D. Nebraska.

May 17, 1991.

Stephen Speicher, Lincoln, Neb., for plaintiff.

Steven A. Russell, Asst. U.S. Atty., Lincoln, Neb. (Harry B. Mallin, Asst. Regional Counsel, Region VII, Dept. of Health and Human Services, of counsel), for defendant.

## MEMORANDUM

URBOM, Senior District Judge.

This action was commenced by Henry Blohm under 42 U.S.C. § 405(g) seeking judicial review of the Secretary's decision that he is not entitled to four additional quarters of Social Security Disability Insurance coverage. This court had initially remanded the case because the ALJ had improperly focused on the plaintiff's supposed motive in filing amended tax returns so as to establish a period of insured status rather than the facts underlying the amended returns. Upon further review, the Secretary again denied insured status for the year ending December 31, 1981. The plaintiff argues that this decision is also flawed because, like the first one, it rests upon inappropriate suspicion and inadequate factual development. I do not agree and shall affirm the Secretary's decision.

### I.

The underlying facts of this case are set out in the earlier memorandum and order, filing 14, and will not be repeated here.[1] Following remand, additional evidence was submitted and a second hearing held in which three witnesses testified: the plaintiff; Charlene Blohm, his former wife; and Marvin Hoy, a former client.

Mr. Hoy testified that his restaurant had been a client of the bookkeeping service operated by Henry and Charlene Blohm during 1981. (Tr. 502–12). Although he stated that Henry did "most of the work," he did not actually see who performed the services. Charlene had always picked up the money and receipts from Mr. Hoy's business and signed the receipts acknowledging payment on his account. He also testified that Charlene would "defer" to

---

[1] The ALJ based his original denial of benefits on his finding that Blohm failed to show that he had at least 20 quarters of coverage during the 40–quarter period ending December 31, 1981. In reaching his conclusion, the ALJ emphasized the discrepancies between the Blohm's original tax return for 1981, which named Charlene Blohm, Henry's ex-spouse, as the proprietor of a bookkeeping and investments service and showed that the business sustained a net loss of $1,615, and the Blohm's amended tax return for 1981, which named Henry as the proprietor of a bookkeeping business and showed that the business sustained a net profit of $1,772. The judge also observed that the amended tax return was filed after Blohm received notice that he would be denied benefits for a disability arising from injuries that he sustained in an automobile acci-

dent in December of 1981 because he was not insured at any time after December 30, 1980.

The ALJ concluded that "Mr. Blohm was endeavoring to manipulate his earnings record to obtain additional quarters of coverage." He found that Blohm had failed to provide adequate evidence to explain why he filed an amended complaint and to establish that the amended return was properly completed. The judge also found that Blohm's testimony was not helpful given his inability to recall certain facts, and that the evidence was replete with examples of inconsistent statements made by Blohm to the Social Security Administration, citing specifically to exhibits dated August 1981, the gist of which were that he had not worked in 1981.

Henry on questions regarding the bookkeeping process to which she did not know the answer.

Charlene Blohm testified that Henry did about 50% of the work associated with the bookkeeping business. (Tr. 514–35). Although she made out the check stubs, Henry wrote the checks, figured out the time cards, and performed the "busy work" such as sorting receipts. In addition, she testified that all the "visible" effects of the bookkeeping service had been performed by her but that Henry had the "expertise" necessary to carry on the business since she had more computer experience while he had experience in restaurant business. She was of the opinion that, based on his expertise in analyzing the business and soliciting the client, Henry's contribution amounted to 70–75% of the business. Furthermore, he had performed bookkeeping duties for their own restaurant business in the past.

According to her testimony, she signed the original tax returns that they now claim erroneously indicated she was sole proprietor of the business but had not read them to catch the error. She does not know why Mr. Blohm originally told their accountant that she was the sole proprietor. They maintained a joint checking account during the relevant period through which they processed all their income and expenses.

In response to questions by Mr. Blohm's counsel, she testified about the deductions that had been included on the original 1981 returns but removed on the amended return. She explained these discrepancies as personal expenses that should not have been deducted as they actually related to their investments rather than the bookkeeping business.

Mr. Blohm stated several times that he could not recall past events well, due to serious head injuries received in an automobile accident in late 1981. When asked what he did with respect to the bookkeeping business, he testified that he could not remember exactly what he had done but that "all the services were provided by me" and that Mrs. Blohm had done some of the work as well. He had requested the amended return be filed in order to correct errors in the original returns. While he testified that Mrs. Blohm had supplied the accountant with the information necessary to file the amended return, she denied having done so.

When questioned by the ALJ, Mr. Blohm denied having received any legal advice pertaining to the need to file an amended return. However, in response to questions posed by his counsel, he testified that B.J. Keller, the lawyer handling his divorce, had discussed his tax returns with him in 1983. The record contains a letter from Ms. Keller in which she states that in reviewing his financial situation the improper deductions were noted and Mr. Blohm's accountant consulted.

## II.

Following the hearing, the ALJ held that Mr. Blohm was not entitled to additional covered quarters because he had not been a self-employed person during 1981. That decision was based largely on the ALJ's conclusion that:

> In order to establish that the claimant engaged in work activity, that he realized earnings, and subsequently obtained the quarters of coverage to gain insured status, he must also refute his and his former wife's earlier allegations of total disability since February 19, 1976.... [T]he claimant has asserted that he did not work on or after February 19, 1976, having done so through at least October 28, 1981. The fact that this is precisely what the claimant has done, in turn raises the issue of the claimant's credibility, and in turn the credibility of his corroborating witnesses.

(Tr. 478). The ALJ then concluded that both Henry and Charlene Blohm's testimony lacked credibility and that Mr. Blohm was not entitled to insured status for the relevant time period. (Tr. 483).

## III.

The issue to be determined is whether the Secretary must accept the self-employment income reflected on the amended tax return so as to entitle Blohm to four addi-

tional months of coverage. The relevant statute, 42 U.S.C. § 405(c)(4)(C) (1983), provides that:

> After the expiration of the time limitation[2] following any year—
>
> [T]he absence of an entry in the Secretary's records as to the self-employment income ... shall be conclusive ... that no such alleged self-employment income was derived by such individual in such year unless it is shown that he filed a tax return of his self-employment income for such year before the expiration of the time limitation following such year, in which case the Secretary shall include in his records the self-employment income of such individual for such year.

Taken literally, this section would appear to require the Secretary to accept all changes in self-employment income which are reflected on amended tax returns. Under this reading, the self-employment income reported to Blohm on his 1981 amended tax return would qualify him for disability insurance benefits. However, it would be imprudent to base a decision on only one subsection without also considering the relevant regulations[3] and accompanying statutory provisions. To that end, it is appropriate to note 42 U.S.C. § 405(c)(5)(E) (1983) which permits the deletion of self-employment amounts which are erroneous "as a result of fraud" notwithstanding the timely filing of an amended return.

The regulations provide further direction in the correction of earnings records pertaining to self-employment income. As applied to this case, the regulations establish Social Security records showing no entry of self-employment as conclusive against the claimant having received such income *except* that the Secretary "*may* correct the earnings record to agree with a tax return of self-employment income filed before the end of the time limit." 20 C.F.R. §§ 404.-803(c)(3), 404.822(b)(2)(i) (1989) (emphasis added).

The plaintiff, relying on *Hollman v. Department of Health and Human Services,* 696 F.2d 13 (2d Cir.1982), argues that these regulations must be held invalid to the extent they are inconsistent with the underlying statute. In *Hollman,* the court required the Secretary to correct its records of self-employment income where the claimant had timely filed amended tax returns. The amendments, precipitated by an IRS audit and litigation in the Tax Court, increased the claimant's self-employment income and provided additional covered quarters for disability insurance. The court noted that the amount of self-employment income had been adjudicated by the Tax Court, thus protecting the government from "false claims based on subsequently manufactured evidence." *Id.* at 17. *See also Jabbar v. Secretary of Health and Human Servs.,* 855 F.2d 295, 297 (6th Cir. 1988) (Secretary may not require verification of timely filed returns prior to correcting records of self-employment income); *but see Matta v. Secretary of Health and Human Servs.,* 806 F.2d 287, 290 (1st Cir. 1986) (Secretary may require verification since "there is nothing in the statute which requires the Secretary to conclude that the individual's self-employment income is as stated in the tax return").

Although I agree with the reasoning and result in *Jabbar* and *Hollman,* I do not believe they support the proposition advanced by the plaintiff. Unlike the situation in *Hollman,* Blohm's amended return for 1981 was not precipitated by the IRS nor was its accuracy adjudicated. The plaintiff argues that the IRS's certification of the amended return achieves the same result as adjudication. I cannot agree. Adjudication by the Tax Court generally

---

**2.** 42 U.S.C. § 405(c)(1)(B) defines the relevant time period as "three years, three months, and fifteen days." In this case, the critical date would be April 15, 1985, since 1981 is the year in question. Therefore, the amended return was timely filed on February 14, 1984. However, the current application for benefits was not filed until December 17, 1985, after the relevant time period had run; hence the other provisions of § 405(c)(4) are not applicable here.

**3.** 42 U.S.C. § 405(a) grants the Secretary "full power and authority to make rules and regulations ... not inconsistent with the provision of this subchapter, which are necessary or appropriate to carry out such provisions."

occurs when the IRS maintains additional taxes are owed and the taxpayer challenges that assessment. Obviously, in determining a tax deficiency, the IRS has examined the taxpayer's records for accuracy. To the contrary, little reason exists for the IRS to scrutinize an amended return indicating additional taxes are due, as in the case of Mr. Blohm's amended return, as compared to an amended return seeking a refund. In fact, Mr. Blohm's accountant noted that "[i]n my many years of practice I do not recall that any amended return bearing tax due was turned down by the Internal Revenue Service." (Tr. 317). The activity associated with adjudication and certification in the present case cannot be compared to achieve the same result as in *Hollman.*

Furthermore, even though the court in *Jabbar* agreed that no "verification" could be required, it specifically held that "the Secretary is not required to accept records that have been filed fraudulently." *Jabbar,* 855 F.2d at 298. To that end, the court permitted the Secretary to require "convincing evidence of the regularity of the documents and the accuracy of their contents" where no official examination of the amended returns had been made by another governmental body. *Id.*

■■■■ Consistent with the holdings of the Second and Sixth Circuits, I find that taken as a whole, section 405(c) of the statute permits a limited amount of discretion by the Secretary in determining whether corrections to earnings records should be made. As noted above, corrections need not be made despite the seemingly mandatory language of section 405(c)(4)(C) if the proposed changes are erroneous. 42 U.S.C. § 405(c)(5)(E). The regulations do not differ from this standard but merely incorporate it into a single regulatory scheme that can be more easily ascertained and understood by claimants. Since no evidence exists of an official examination of the amended return, it was appropriate for the ALJ to seek convincing evidence of the accuracy of the amendment in order to protect the government from false claims. *Hollman,* 696 F.2d at 17.

■■■■ Having determined that some discretion is permitted, the issue becomes whether the Secretary abused that discretion in determining that the changes contained on the amended tax returns were erroneous and therefore not adequate to warrant an entry of self-employment income for the pertinent period. The court in *Jabbar* directed that the regularity and accuracy of the amended returns should be measured by consideration of the same six factors used to determine when enough evidence had been presented to the Secretary for a determination of disability:

In deciding if evidence is convincing, we consider whether—

(a) The information contained in the evidence was given by a person in a position to know the facts;

(b) There was any reason to give false information when the evidence was created;

(c) Information contained in the evidence was given under oath, or with witnesses present, or with knowledge there was a penalty for giving false information;

(d) The evidence was created at the time the event took place or shortly thereafter;

(e) The evidence had been altered or has any erasures on it; and

(f) Information contained in the evidence agreed with other available evidence, including the Secretary's records.

20 C.F.R. § 404.708 (1989). Credibility of the person providing the information is necessarily a relevant issue in the application of these factors. I find that the ALJ examined the pertinent changes in the amended tax return and that his determination that the changes were erroneous was not an abuse of discretion but that substantial evidence existed to support that finding. *McMillian v. Schweiker,* 697 F.2d 215, 220 (8th Cir.1983).

The amended return contained two basic changes, both of which must be valid to entitle Blohm to additional covered quarters. First, the original return showed a net loss of $1615 for the bookkeeping busi-

ness while the amended return showed a net profit of $1772. Second, the original return listed Charlene Blohm as the sole proprietor of the business while the amended return showed Henry Blohm as the sole proprietor. Blohm maintains that the change from a net loss to a net profit resulted from the elimination of business deductions that were improperly attributed to the bookkeeping business. These expenses were instead related to his own investment activities and could not be deducted as business expenses. The ALJ does not appear to dispute these changes.

■ However, the change in proprietor was a major object of scrutiny by the ALJ. Since only testimonial, rather than tangible, evidence supports Blohm's contention that he was the owner of the business, the issue is primarily one of credibility. The Secretary is entitled to examine the record as a whole and evaluate a claimant's credibility to determine whether he is eligible for disability benefits. *Hardin v. Heckler*, 795 F.2d 674, 676 (8th Cir.1986). Furthermore, determination of credibility is not within the province of the court but belongs to the Secretary. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987).

Application of the six factors set out in *Jabbar* reveal weaknesses in the evidence relied upon by the claimant. While the evidence was provided by a person in the position to know the facts and the information was provided under penalty of law, Mr. Blohm had reason to provide false information and the new information is diametrically opposed to other evidence available to the Secretary. In addition, all tangible evidence of business activity indicates Mrs. Blohm owned and operated the business as stated on the original return. Furthermore, the conflicting evidence as to who owned the business was provided by the same person without credible explanation of the supposed "mistake" in the original.

In the absence of credible evidence to the contrary, there was substantial evidence to support the ALJ's determination that the amended tax returns were erroneous. Therefore, pursuant to section 405(c), the Secretary was not required to correct his records of self-employment income during 1981.