# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————

No.  97-2261

———————

The United States of America    *
ex rel. Daniel G. O'Keefe,    *
   *
       Plaintiff - Appellant,    *
   * Appeal from the United States
     v.    * District Court for the
   * Eastern District of Missouri.
McDonnell Douglas Corporation,    *
   *
       Defendant - Appellee.    *
——————————————    *
   *
The Conference of Chief Justices,    *
   *
          Amicus    *
Curiae.    *

———————

Submitted:  September 8, 1997
Filed:  January 6, 1998

———————

Before HANSEN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

———————

HANSEN, Circuit Judge.

The United States of America appeals the district court's[1] protective order preventing government attorneys from engaging in ex parte communications with current employees of the defendant, McDonnell Douglas Corporation (McDonnell Douglas). The government also appeals restrictions placed upon its investigation of former employees. We affirm.

## I.

This action arose as a qui tam action brought by Daniel O'Keefe under the False Claims Act, 31 U.S.C. §§ 3729-33, alleging mischarging of labor hours by employees of McDonnell Douglas Corporation (McDonnell Douglas) while working on United States military contracts. The United States subsequently intervened in the suit pursuant to 31 U.S.C. § 3730(b)(4) and (c). On behalf of the United States, the Department of Justice (DOJ) began its pretrial investigation. In particular, investigative agents of the DOJ began making ex parte contacts with various present and former lower-level employees of McDonnell Douglas without the consent of McDonnell Douglas's counsel.

McDonnell Douglas brought a motion for a protective order preventing such contacts, arguing that such ex parte contacts were barred by Missouri Supreme Court Rule 4-4.2. Missouri Supreme Court Rule 4-4.2 provides, "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." The official comment explains that where the opposing party is an organization, Rule 4-4.2 bars ex parte communications with "persons having the managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that

---

[1]The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." This comment was adopted by the Supreme Court of Missouri in <u>State ex rel. Pitts v. Roberts</u>, 857 S.W.2d 200, 202 (Mo. 1993) (en banc). The Supreme Court of Missouri's ethical rules have in turn been adopted by the United States District Court for the Eastern District of Missouri. <u>See</u> E.D. Mo. L.R. 12.02 ("The Code of Professional Responsibility adopted by this Court is the Code of Professional Responsibility adopted by the Supreme Court of Missouri, as amended from time to time, except as may otherwise be provided by this Court's Rules of Disciplinary Enforcement.").

The government argues that a protective order was not warranted because the ex parte contacts it engaged in are expressly authorized by 28 C.F.R. § 77.10(a), a rule promulgated by the Attorney General of the United States. This rule provides as follows:

> A communication with a current employee of an organization that qualifies as a represented party or represented person shall be considered to be a communication with the organization for purposes of this part only if the employee is a controlling individual. A "controlling individual" is a current high level employee who is known by the government to be participating as a decision maker in the determination of the organization's legal position in the proceeding or investigation of the subject matter.

28 C.F.R. § 77.10(a). The Government argues that section 77.10(a) supersedes the local rules of the Eastern District of Missouri. In the alternative, the government argues that, in light of section 77.10(a), the disputed ex parte contacts by DOJ attorneys were "authorized by law," and thus fell under the express exception to Rule 4-4.2 which states that ex parte contacts are permissible if "authorized by law." McDonnell Douglas responds to both arguments by asserting that the Attorney General lacked the

statutory authority to issue 28 C.F.R. § 77.10(a), and that this provision is therefore invalid and of no effect.

The district court concluded that section 77.10(a) fell beyond the limits of the Attorney General's statutory authority. Accordingly, it granted the protective order in part, finding that the government's ex parte contacts with current McDonnell Douglas employees violated Missouri Supreme Court Rule 4-4.2 as adopted by the Eastern District of Missouri. It ordered the government to cease such contacts and to provide discovery of information obtained from those contacts already made. The court also imposed conditions on ex parte contacts with former McDonnell Douglas employees. At the government's request, we stayed that portion of the district court's order that requires the government to provide discovery of information obtained from its ex parte contacts.

## II.

"It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988); see also Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 374 (1986) ("an agency literally has no power to act . . . unless and until Congress confers power upon it."). The government claims that 5 U.S.C. § 301 and various sections of Title 28 of the United States Code grant the Attorney General the authority to promulgate 28 C.F.R. § 77.10(a). We address each assertion in turn.

### A.  The Housekeeping Statute

The government relies primarily on 5 U.S.C. § 301 (1994). Section 301, better known as the "Housekeeping Statute," was passed in 1789 "to help General Washington get his administration underway by spelling out the authority for executive officials to set up offices and file government documents." H.R. Rep. No. 85-1461

(1958), <u>reprinted in</u> 1958 U.S.C.C.A.N. 3352.  The current version of the Housekeeping Statute provides as follows:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property.  This section does not authorize withholding information from the public or limiting the availability of records to the public.

5 U.S.C. § 301 (1994).

The government's argument that the Housekeeping Statute authorizes the Attorney General's promulgation of 28 C.F.R. § 77.10(a) contradicts the plain meaning of the statute and the jurisprudence of the Supreme Court. In <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281, 310 (1979)**,** the Supreme Court examined the Housekeeping Statute and held that it *does not* provide statutory authority for substantive regulations.  After a brief historical analysis of the provision, the Court wrote:

> Given this long and relatively uncontroversial history, and the terms of the statute itself, it seems to be simply a grant of authority to the agency to regulate its own affairs. . . .  It is indeed a "housekeeping statute," authorizing what the APA terms "rules of agency organization, procedure or practice" as opposed to "substantive rules."

<u>Id.</u> at 309-10.  In so ruling, the Court noted that Congress had looked carefully at the statute in 1958, that the Special Subcommittee on Government Information had "unanimously agreed that [§ 301] originally was adopted in 1789 to provide for the day-to-day office housekeeping in the Government departments," and that attempts to construe it as something more was "misuse" which "twisted" the statute.  <u>Chrysler Corp.</u>, 441 U.S. at 310 n.41 (quoting H.R. Rep. No. 85-1461 at 7 (1958)) (alterations in original).

In recent years, several agencies have unsuccessfully attempted to find statutory authority for substantive regulations in the Housekeeping Statute. See In re Bankers Trust Co., 61 F.3d 465, 470 (6th Cir. 1995) (Federal Reserve Board regulation requiring subpoenaed party to refuse production of confidential FRB information, contrary to Federal Rule of Civil Procedure 34, was not authorized by the Housekeeping Statute and "exceed[ed] the congressional delegation of authority"), cert. dismissed, 116 S. Ct. 1711 (1996); Exxon Shipping Co. v. United States Dep't of Interior, 34 F.3d 774, 776-78 (9th Cir. 1994) (Housekeeping Statute did not authorize regulations allowing agency to withhold deposition testimony of federal employees); In re Cincinnati Radiation Litig., 874 F. Supp. 796, 826-27 (S.D. Ohio 1995) (Housekeeping Statute did not authorize 1953 Defense Department directive on the use of human volunteers in experimental research); McElya v. Sterling Med. Inc., 129 F.R.D. 510, 514 (W.D. Tenn. 1990) (Housekeeping Statute did not give Department of Navy authority to create general discovery privilege for persons under its jurisdiction). The government's argument in the case at bar is simply one more attempt to twist this simple administrative statute into an authorization for the promulgation of substantive rules.

The government cites three cases in support of its reading of the Housekeeping Statute. These are Boske v. Comingore, 177 U.S. 459 (1900), United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951), and Georgia v. United States, 411 U.S. 526 (1973). None of these cases controls the case at bar.

Touhy and Boske both involve regulations which dealt exclusively with internal administrative procedure. The regulations at issue in Touhy established which agency employees would produce documents in response to a subpoena duces tecum. 340 U.S. at 467-68. Similarly, the regulations at issue in Boske established which IRS officials would have control over certain IRS records. 177 U.S. at 469-70. In contrast, the regulations in the case at bar are not limited to issues of internal agency procedures.

Rather, they purport to exempt the DOJ from the requirements of state and local federal ethical rules which bind all other litigants.

Additionally, both <u>Boske</u> and <u>Touhy</u> were decided prior to the 1958 amendment to section 301, which expresses a clear congressional mandate that agencies cannot promulgate regulations exempting themselves from their duty to make information available to the public. <u>See</u> <u>NLRB v. Capitol Fish Co.</u>, 294 F.2d 868, 875 (5th Cir. 1961) (Since 1958, it has been clear that the Housekeeping Statute "cannot be construed to establish authority in the executive departments to determine whether certain papers and records are privileged."). <u>Boske</u> reflects a particularly antiquated view of administrative rule making authority. <u>See</u> <u>Guardians Ass'n v. Civil Serv. Comm'n</u>, 463 U.S. 582, 614-15 n.2 (1983) (O'Connor, J., concurring) ("cases since <u>Boske</u> articulating the limitations applicable to agency rule making power indicate that the scope of agency discretion is indeed narrower than the language of <u>Boske</u> would suggest").

Finally, the <u>Georgia</u> case is not on point. In <u>Georgia</u>, the Court held that the Housekeeping Statute provided "ample legislative authority" for regulations promulgated by the Attorney General. 411 U.S. at 536. However, the regulations at issue in <u>Georgia</u> did not expand the agency's power. Rather, they merely established procedures for the use of power delegated to the Attorney General by the Voting Rights Act of 1965. <u>Id.</u> <u>Georgia</u> therefore provides no support for the government's contention that the Housekeeping Statute authorized the substantive regulation at issue here.

B.     Title 28

The government relies additionally on various sections of Title 28 of the United States Code (sections 509, 510, 515(a), 516, 519, 533, and 547) which, it argues, collectively authorize 28 C.F.R. § 77.10(a). We reject this contention because none

of these is any more than a general enabling statute, see United States v. Lopez, 4 F.3d 1455, 1461 (9th Cir. 1993) (rejecting claim that §§ 509, 515, 516, 533, and 547 authorized similar DOJ policy), and because no reviewing court could "reasonably . . . conclude that the grant of authority contemplates the regulations issued." See Chrysler Corp., 441 U.S. at 308. Sections 509, 510, 515(a), 516, 519, and 533 define the duties of the Attorney General, grant her the power to appoint inferior officers and to delegate power to these officers, and provide that these officers shall answer to her.[2]

---

[2]These sections provide as follows:

> All functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General except the functions
>   (1) vested by subchapter II of chapter 5 of title 5 in administrative law judges employed by the Department of Justice;
>   (2) of the Federal Prison Industries, Inc.; and
>   (3) of the Board of Directors and officers of the Federal Prison Industries, Inc.

28 U.S.C. § 509.

> The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General.

28 U.S.C. § 510.

> The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

28 U.S.C. § 515(a).

> Except as otherwise provided by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

Section 547 simply defines the role of United States Attorneys who, although appointed by the President and removable by him, are nonetheless directed by the Attorney General in the discharge of their duties pursuant to section 519.[3]  The district court

---

28 U.S.C. § 516.

> Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.

28 U.S.C. § 519.

> The Attorney General may appoint officials—
>    (1) to detect and prosecute crimes against the United States;
>    (2) to assist in protection of the person of the President; and
>    (3) to conduct such other investigations regarding official matters under the control of the Department of Justice and the Department of State as may be directed by the Attorney General.
>
> This section does not limit the authority of departments and agencies to investigate crimes against the United States when investigative jurisdiction has been assigned by law to such departments and agencies.

28 U.S.C. § 533.

[3]Section 547 provides:

> Except as otherwise provided by law, each United States attorney, within his district, shall—
>    (1) prosecute for all offenses against the United States;
>    (2) prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned;
>    (3) appear in behalf of the defendants in all civil actions, suits or proceedings pending in his district against collectors, or other officers of the revenue or customs for any act done by them or for the recovery

correctly concluded that nothing in any of these sections expressly or impliedly gives the Attorney General the authority to exempt lawyers representing the United States from the local rules of ethics which bind all other lawyers appearing in that court of the United States.

### III.

An agency's promulgation of rules without valid statutory authority implicates core notions of the separation of powers, and we are required by Congress to set these regulations aside. 5 U.S.C. § 706(2)(C) (1994) ("The reviewing courts shall . . . hold unlawful and set aside agency action, findings and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . ."); see also Chrysler Corp., 441 U.S. at 308 (regulation must be struck down unless reviewing court is "reasonably [] able to conclude that the grant of authority contemplates the regulations issued"); Transohio Sav. Bank v. Director, Office of Thrift Supervision, 967 F.2d 598, 621 (D.C. Cir. 1992) ("Agency actions beyond delegated authority are 'ultra vires,' and courts must invalidate them.").

of any money exacted by or paid to these officers, and by them paid into the Treasury;

(4) institute and prosecute proceedings for the collection of fines, penalties, and forfeitures incurred for violation of any revenue law, unless satisfied on investigation that justice does not require the proceedings; and

(5) make such reports as the Attorney General may direct.

28 U.S.C. § 547.

Because we cannot reasonably conclude that the grants of authority in the statutory provisions cited by the government contemplate the issuance of anything resembling 28 C.F.R. § 77.10(a), we find this regulation to be invalid. Accordingly, we reject the government's argument that its ex parte contacts are "authorized by law" and therefore satisfy Rule 4-4.2. Moreover, because invalid promulgations of the Attorney General can neither preempt nor supersede the local federal rules for the Eastern District of Missouri, we reject the government's supersession/preemption argument as well.[4] Because the government's position has no remaining legs on which to stand, we `lift the stay and affirm the order of the district court.`

**IV.**

The district court determined that Missouri Supreme Court Rule 4-4.2 does not require the DOJ to obtain the consent of McDonnell Douglas's counsel before initiating ex parte contacts with McDonnell Douglas's *former* employees, unless such former employees are currently represented by counsel. However, it ordered the government to keep a list of the names of the former employees it interviews and the dates on which it interviews them. The court further ordered the government to preserve all statements, notes, and answers to questions obtained as a result of these contacts, and to make

---

[4]The preemption issue, which consumes a major portion of the government's brief, is a non-issue in this case. At issue in this case is whether attorneys representing the United States must abide by the ethical standards imposed by the local rules of a United States District Court when conducting the government's litigation in that court. A federal regulation cannot preempt federal law, because "Supremacy Clause considerations do not come into play when a court balances competing federal rules." City of Kirkwood v. Union Elec. Co., 671 F.2d 1173, 1178-79 n.14 (8th Cir. 1982), cert. denied, 459 U.S. 1170 (1983); see United States v. Klubock, 832 F.2d 649, 651 (1st Cir. 1987) (finding preemption doctrine inapplicable to federal court rule which incorporates state ethics rules), aff'd en banc, 832 F.2d 664, 667 (1st Cir. 1987).

these documents available to McDonnell Douglas for review upon request, subject to work-product limitations.

The government appeals the imposition of these conditions upon its investigation of the former employees. We review discovery matters only for "gross abuse of discretion resulting in fundamental unfairness in the trial of the case." Prow v. Medtronic, Inc., 770 F.2d 117, 122 (8th Cir. 1985). Since the district court created safeguards to protect government attorney work-product from discovery, and since the non-privileged information would be subject to normal discovery in any case, we find no gross abuse of discretion.

## V.

For the reasons stated above, we lift the stay and affirm the judgment of the district court.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.