# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1241

_____

Robert J. Desselle,

        Appellant,

v.

Jo Anne B. Barnhart, Commissioner
of Social Security Administration,

        Appellee.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the Western
\*  District of Missouri.
\*
\*
\*
\*

_____

Submitted: January 14, 2005
Filed: April 27, 2005

_____

Before LOKEN, Chief Judge, and HANSEN and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Robert Desselle appeals the district court's affirmance of a final administrative decision that denied Mr. Desselle disability insurance benefits under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401-434. Mr. Desselle challenges the determination of the administrative law judge (ALJ) that he was not insured for disability. We vacate the district court's judgment and order the court to remand the case to the Social Security Administration for further proceedings.

The Social Security Act divides each year into four three-month quarters, *see* 42 U.S.C. § 413(a)(1), and to be insured for disability and thereby qualify for disability insurance benefits, Mr. Desselle must have had at least "20 quarters of coverage during the 40-quarter period" that ended with the quarter in which he became disabled or any later quarter in which he was disabled, 42 U.S.C. § 423(c)(1)(B)(i); 20 C.F.R. § 404.130(b)(2).  For a self-employed claimant such as Mr. Desselle, the Social Security Act defines a quarter of coverage as a quarter in which the claimant's net income exceeds a statutory minimum, which varies by year. 42 U.S.C. §§ 411(b), 413(d)(2).  But for years after 1977, the Social Security Administration determines quarters of coverage by examining net income for the entire year, rather than for a particular quarter.  20 C.F.R. § 404.143.  Consequently, to have four quarters of coverage during a particular year, Mr. Desselle need not have worked during each quarter, as long as his net income for the year was at least four times that year's statutory minimum for one quarter of coverage.

The ALJ found that Mr. Desselle was four quarters shy of the twenty quarters of coverage needed to qualify for disability insurance benefits and that he had no quarters of coverage in 1993, a year that fell within the forty-quarter period during which Mr. Desselle was required to have twenty quarters of coverage.  Mr. Desselle contends that, in the proceeding before the ALJ, he offered conclusive evidence that he earned enough income in 1993 to have four quarters of coverage in that year.  The evidence that Mr. Desselle presented to the ALJ included one tax return for 1993; two amended tax returns for 1993; a completed Schedule C (a form used to report the profit or loss of a sole proprietorship) and a completed Schedule SE (a form used to compute self-employment tax) for 1993; a copy of a check made out to the Internal Revenue Service to pay for Mr. Desselle's 1993 tax; and a notice of deficiency from the IRS for overdue 1993 self-employment tax.

Mr. Desselle's initial tax return for 1993 is dated March 29, 1995, which is after Mr. Desselle filed his application for disability in January, 1995.  The initial tax

return shows $5200 in total income, which was classified as "other income" and described as "Handyman Income from odd jobs," and no taxes owed. Mr. Desselle's first amended tax return for 1993, dated April 15, 1996, also shows $5200 in total income but added $2360 in income tax owed, the calculation of which was not explained. The second and final amended return for 1993, which is dated April 15, 1997, reclassified the income tax of $2360 owed for 1993 as self-employment tax. Attached to the second amended return is a Schedule SE that shows $33,405 in self-employment income for 1993, resulting in $4720 in self-employment tax. Neither of these two numbers appears on the second amended return itself, although the deduction for one-half of the self-employment tax of $4720 equals $2360, the amount entered on the second amended return as self-employment tax. The Schedule C that Mr. Desselle offered as evidence is undated and shows $3432 in net income from his business in 1993, a figure that does not correspond to either the Schedule SE or any of the tax returns. Mr. Desselle in 1996 paid the IRS $2360 toward his 1993 taxes, but the IRS treated those funds as an overpayment and applied them toward overdue taxes from 1984 and 1985. After Mr. Desselle filed his second amended return, however, the IRS sent Mr. Desselle a notice of deficiency, dated June 16, 1997, for $4720 in self-employment tax plus interest and penalties.

Whether these tax returns are conclusive evidence of Mr. Desselle's self-employment income for 1993 is a question that the Social Security Act answers. Because Mr. Desselle's second amended 1993 tax return was filed within the time limitation set forth in 42 U.S.C. § 405(c)(1)(B), because that time limitation expired, and because the Social Security Commissioner's records of Mr. Desselle's self-employment income contain no entry for 1993, the Act requires the Commissioner to "include in the Commissioner's records the self-employment income" reported in Mr. Desselle's second amended return. 42 U.S.C. § 405(c)(4)(C); *Jabbar v. Secretary of Health & Human Servs.*, 855 F.2d 295, 297-98 (6th Cir. 1988) (per curiam). *But see Matta v. Secretary of Health & Human Servs.*, 806 F.2d 287, 290 (1st Cir. 1986) (per curiam). In the circumstances of this case, however, the Social Security Act also

-3-

permits the Commissioner "to delete or reduce the amount of any entry which is erroneous as a result of fraud."  42 U.S.C. § 405(c)(5)(E); *Jabbar*, 855 F.2d at 298; *Blohm v. Secretary of Health & Human Servs.*, 765 F. Supp. 1424, 1427 (D. Neb. 1991).  Therefore Mr. Desselle's 1993 tax returns are not conclusive evidence of his self-employment income in that year, if the Commissioner finds, on a proper record, that the self-employment income that Mr. Desselle reported is erroneous as a result of fraud.

We already have rehearsed the inconsistencies in the tax returns that Mr. Desselle filed, all of which postdated his application for disability insurance benefits.  Additionally, at the hearing before the ALJ, Mr. Desselle's brother and counsel, Kent Desselle, testified that Mr. Desselle "had no input into" the preparation of the second amended 1993 return.  Instead, according to Kent, Mr. Desselle's family attempted to reconstruct his income from checks drawn in 1993 on the checking account of Mr. Desselle's corporation, which he treated as a sole proprietorship.  Those checks, however, do not sum to any of the numbers reported as income on Mr. Desselle's 1993 tax returns and, more importantly, do not show when the money in the checking account was earned.  Nor do the other business records from 1993, which include estimates of the costs and profits of a construction project, show whether Mr. Desselle earned a profit that year.  Finally, Kent admitted that even he could not "make heads or tails out of the [second amended 1993] tax return" and that he "had no high confidence level that the [second amended 1993] tax return was accurate."  Indeed, when the ALJ asked him whether Mr. Desselle "may have had a complete loss during [1993] but you can't say one way or another," Kent answered, "That's right."  Thus, the evidence in the record might perhaps support a finding of error that resulted from fraud, which in turn would allow the Commissioner "to delete or reduce the amount" of Mr. Desselle's self-employment income for 1993.  As far as we are able to discern, however, the ALJ made no such finding.

In deciding not to credit Mr. Desselle with four quarters of coverage for 1993, the ALJ applied 20 C.F.R. § 404.822 (the regulation that implements the Social Security Act's provisions governing corrections to earnings records) and found that Mr. Desselle "did not produce satisfactory evidence to warrant amending his earnings record for 1993." *See* 20 C.F.R. § 404.822(a). According to the regulation, the Social Security Administration "will correct SSA records to agree with a tax return of ... self-employment income" that was "filed before the end of the time limit" in § 405(c)(1)(B) "to the extent that the amount of earnings shown in the return is correct." 20 C.F.R. § 404.822(b)(2)(i). Although the Social Security Administration wrote § 404.822 with the laudable goal of making the regulation "clearer and easier for the public to use," Federal Old-Age, Survivors, and Disability Insurance; Records of Earnings, 44 Fed. Reg. 38,452 (July 2, 1979), the succinct regulation that resulted appears to overstate the agency's actual discretion in this case. The Social Security Act positively requires the Social Security Administration to enter into its records the self-employment income reported in a claimant's tax return when § 405(c)(4)(C) applies. In the circumstances here, the Act permits the Social Security Administration to change such an entry only when it "is erroneous as a result of fraud." 42 U.S.C. § 405(c)(5)(E). The regulation, however, allows the agency to refuse to enter into its records self-employment income reported on a tax return even in the absence of fraud. *See* 20 C.F.R. § 404.822. To the extent that the regulation thereby extends the Social Security Administration's discretion beyond the statutory limit, we hold that it is an unreasonable reading of the statute and thus unenforceable. *See* 5 U.S.C. § 706(2)(C); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1257 (8th Cir. 1998).

Because we have determined that § 405(c)(4)(C) and § 405(c)(5)(E) govern this case, and because the ALJ failed to find that Mr. Desselle's second amended 1993 tax return was fraudulent, we vacate the judgment of the district court and remand the

case to that court, with directions to remand to the Social Security Administration for further administrative proceedings, so that the ALJ can apply the correct rule.

_____