# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1241

———————

Robert J. Desselle,                          *
                                             *
            Appellant,                       *
                                             *    Appeal from the United States
      v.                                     *    District Court for the Western
                                             *    District of Missouri.
Jo Anne B. Barnhart, Commissioner            *
of Social Security Administration,           *
                                             *
            Appellee.                        *

———————

Submitted: January 14, 2005
Filed: July 20, 2005

———————

Before LOKEN, Chief Judge, and HANSEN and MORRIS SHEPPARD ARNOLD,
      Circuit Judges.

———————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

      Robert Desselle appeals the affirmance by the district court[1] of a final administrative decision that denied Mr. Desselle disability insurance benefits under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401-434. Mr. Desselle challenges the determination of the administrative law judge (ALJ) that he was not insured for disability. We affirm.

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

The Social Security Act divides each year into four three-month quarters, *see* 42 U.S.C. § 413(a)(1), and to be insured for disability and thereby qualify for disability insurance benefits, Mr. Desselle must have had at least "20 quarters of coverage during the 40-quarter period" that ended with the quarter in which he became disabled or any later quarter in which he was disabled, 42 U.S.C. § 423(c)(1)(B)(i); 20 C.F.R. § 404.130(b)(2).  For a self-employed claimant such as Mr. Desselle, the Social Security Act defines a quarter of coverage as a quarter in which the claimant's net income exceeds a statutory minimum, which varies by year. 42 U.S.C. §§ 411(b), 413(d)(2).  But for years after 1977, the Social Security Administration determines quarters of coverage by examining net income for the entire year, rather than for a particular quarter.  20 C.F.R. § 404.143.  Consequently, to have four quarters of coverage during a particular year, Mr. Desselle need not have worked during each quarter, as long as his net income for the year was at least four times that year's statutory minimum for one quarter of coverage.

The ALJ found that Mr. Desselle was four quarters shy of the twenty quarters of coverage needed to qualify for disability insurance benefits and that he had no quarters of coverage in 1993, a year that fell within the forty-quarter period during which Mr. Desselle was required to have twenty quarters of coverage.  Mr. Desselle contends that, in the proceeding before the ALJ, he offered conclusive evidence that he earned enough income in 1993 to have four quarters of coverage in that year.  The evidence that Mr. Desselle presented to the ALJ included one tax return for 1993; two amended tax returns for 1993; a completed Schedule C (a form used to report the profit or loss of a sole proprietorship) and a completed Schedule SE (a form used to compute self-employment tax) for 1993; a copy of a check made out to the Internal Revenue Service to pay for Mr. Desselle's 1993 tax; and a notice of deficiency from the IRS for overdue 1993 self-employment tax.

Mr. Desselle's initial tax return for 1993 is dated March 29, 1995, which is after Mr. Desselle filed his application for disability in January, 1995.  The initial tax

return shows $5200 in total income, which was classified as "other income" and described as "Handyman Income from odd jobs," and no taxes owed.  Mr. Desselle's first amended tax return for 1993, dated April 15, 1996, also shows $5200 in total income but added $2360 in income tax owed, the calculation of which was not explained.  The second and final amended return for 1993, which is dated April 15, 1997, reclassified the income tax of $2360 owed for 1993 as self-employment tax.  Attached to the second amended return is a Schedule SE that shows $33,405 in self-employment income for 1993, resulting in $4720 in self-employment tax and one-half of that amount ($2360) as an income tax deduction, *see* 26 U.S.C. § 164(f).  The second amended return itself does not mention $33,405 and, as we have said, shows $2360, not $4720, as self-employment tax.  The Schedule C that Mr. Desselle offered as evidence is undated and shows $3432 in net income from his business in 1993, a figure that does not correspond to either the Schedule SE or any of the tax returns.  Mr. Desselle in 1996 paid the IRS $2360 toward his 1993 taxes, but the IRS treated those funds as an overpayment and applied them toward overdue taxes from 1984 and 1985.  After Mr. Desselle filed his second amended return, however, the IRS sent Mr. Desselle a notice of deficiency, dated June 16, 1997, for $4720 in self-employment tax plus interest and penalties.

Whether these tax returns are conclusive evidence of Mr. Desselle's self-employment income for 1993 is a question that the Social Security Act answers.  Because Mr. Desselle's second amended 1993 tax return was filed within the time limitation set forth in 42 U.S.C. § 405(c)(1)(B), because that time limitation expired, and because the Social Security Commissioner's records of Mr. Desselle's self-employment income contain no entry for 1993, the Act requires the Commissioner to "include in the Commissioner's records the self-employment income" reported in Mr. Desselle's second amended return.  42 U.S.C. § 405(c)(4)(C); *Jabbar v. Secretary of Health & Human Servs.*, 855 F.2d 295, 297-98 (6th Cir. 1988) (per curiam); *Hollman v. Department of Health & Human Services*, 696 F.2d 13, 16-17 (2d Cir. 1982).  *But see Matta v. Secretary of Health & Human Servs.*, 806 F.2d 287, 290 (1st

Cir. 1986) (per curiam). But since Mr. Desselle applied for disability insurance benefits within the time limitation defined in § 405(c)(1)(B), the Social Security Act also permits the Commissioner "to change or delete any entry with respect to ... self-employment income in the Commissioner's records." 42 U.S.C. § 405(c)(5)(A). According to the regulation that implements this statutory provision, the Social Security Administration "will correct SSA records to agree with a tax return of ... self-employment income" that was "filed before the end of the time limit" in § 405(c)(1)(B) "to the extent that the amount of earnings shown in the return is correct," 20 C.F.R. § 404.822(b)(2)(i), provided that "satisfactory evidence shows SSA records are incorrect," *id.* at § 404.822(a). Although this regulation does not mirror the statutory scheme of first crediting self-employment income reported in a timely-filed tax return and then changing that entry when one of the circumstances listed in 42 U.S.C. § 405(c)(5) applies, the statute affords the Commissioner broad discretion to alter records of self-employment income in this case, *see* 42 U.S.C. § 405(c)(5)(A), and therefore we believe that the difference between the statute and the regulation does not have a practical effect in this instance.

In deciding not to credit Mr. Desselle with four quarters of coverage for 1993, the ALJ found that Mr. Desselle "did not produce satisfactory evidence to warrant amending his earnings record for 1993." *See* 20 C.F.R. § 404.822(a). Because the ALJ applied the correct regulation, we must affirm if substantial evidence on the record as a whole supports the ALJ's decision. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). We already have rehearsed the inconsistencies in the tax returns that Mr. Desselle filed, all of which postdated his application for disability insurance benefits. Additionally, at the hearing before the ALJ, Mr. Desselle's brother and counsel, Kent Desselle, testified that Mr. Desselle "had no input into" the preparation of the second amended 1993 return. Instead, according to Kent, Mr. Desselle's family attempted to reconstruct his income from checks drawn in 1993 on the checking account of Mr. Desselle's corporation, which he treated as a sole proprietorship. Those checks, however, do not sum to any of the numbers reported

as income on Mr. Desselle's 1993 tax returns and, more importantly, do not show when the money in the checking account was earned. Nor do the other business records from 1993, which include estimates of the costs and profits of a construction project, show whether Mr. Desselle earned a profit that year. Finally, Kent admitted that even he could not "make heads or tails out of the [second amended 1993] tax return" and that he "had no high confidence level that the [second amended 1993] tax return was accurate." Indeed, when the ALJ asked him whether Mr. Desselle "may have had a complete loss during [1993] but you can't say one way or another," Kent answered, "That's right."

The record manifestly contains substantial evidence in support of the ALJ's finding that Mr. Desselle had no quarters of coverage in 1993. We therefore affirm the denial of disability insurance benefits to Mr. Desselle.

_____